No. 67,190

STATE OF KANSAS, *Appellee,* v. FRED W. DEAVERS, *Appellant.*

(843 P.2d 695)

Opinion
filed December 11, 1992.

*Lucille Marino,* assistant appellate defender, argued the cause, and *Jessica R. Kunen,* chief appellate defender, was with her on the brief for appellant.

*Debra S. Byrd,* assistant district attorney, argued the cause, and *Nola Foulston,* district attorney, and *Robert T. Stephan,* attorney general, were with her on the brief for appellee.

The opinion of the court was delivered by

LOCKETT, J.: Fred W. Deavers appeals his conviction and sentence for the first-degree murder of a law enforcement officer, claiming the trial court erred:

(1) in refusing to instruct the jury on the lesser included offenses of first-degree murder;

(2) in denying the defense a continuance of the trial;

(3) in excluding evidence of the officer's reputation for excessive force;

(4) in improperly instructing on a law enforcement officer's justification for use of deadly force;

(5) in allowing an improper display of the deceased officer's photograph;

(6) in not instructing the jury on eyewitness identification;

(7) in improperly instructing the jury as to its duty in determining whether to impose the mandatory 40-year sentence; and

(8) in imposing the mandatory 40-year term of imprisonment after the State failed to give notice as required by statute.

On May 12, 1991, at approximately 11:00 p.m., Fred W. Deavers; his brother, Garland Deavers; and John Doyen were riding around Wichita in Garland Deavers' van. Garland Deavers was driving. The van displayed a 30-day permit issued to Fred Deavers for a Yamaha motorcycle. Officer Christopher Willems of the Sedgwick County Sheriff's Department observed the permit and turned on his flashing lights. The van stopped in a mall parking lot. Officer Willems exited his vehicle, approached the van, and ordered the driver, Garland Deavers, to exit the van.

There was conflicting testimony concerning the events of the next few minutes. However, it is not disputed that a fight erupted between Garland Deavers and Officer Willems and that Willems was shot to death by Fred Deavers. Fred Deavers was charged with one count of premeditated first-degree murder. K.S.A. 1991 Supp. 21-3401. Deavers claimed that he had acted in defense of his brother. The jury was instructed on first-degree murder and on defense of another. Fred Deavers was found guilty of first-degree murder. The jury recommended a mandatory 40-year sentence. The trial court followed the jury's sentencing recommendation. Deavers appeals from his conviction and sentence for first-degree murder.

## 1. REFUSAL TO INSTRUCT THE JURY ON THE LESSER INCLUDED OFFENSES OF FIRST-DEGREE MURDER.

A trial court has an affirmative duty to instruct the jury on all lesser included offenses established by the evidence. K.S.A. 21-3107(3). Instructions on lesser included offenses must be given even though the evidence is weak and inconclusive and consists solely of the testimony of the defendant. An instruction on a lesser included offense is not required, however, if the evidence at trial excludes a theory of guilt on the lesser offense. The duty of the trial court to instruct on the lesser included offense is applicable only when the evidence introduced at the trial is such that the defendant might reasonably have been convicted of the lesser offense. When the trial court refuses to give an instruction on a lesser included offense, the appellate court must view the evidence supporting the lesser charge in the light most favorable

to the party requesting the instruction. *State v. Dixon,* 248 Kan. 776, 781-82, 811 P.2d 1153 (1991).

## SECOND-DEGREE MURDER

Defendant argues an instruction on second-degree murder was required because there was no evidence of premeditation or a plan or plot to kill the officer. He contends the evidence was just as susceptible to supporting a second-degree murder charge as it was to one for first-degree murder; therefore, the jury was required to determine his level of culpability. The trial judge refused the defendant's request to instruct the jury on second-degree murder, voluntary manslaughter, and involuntary manslaughter as lesser included offenses of first-degree murder. Defendant contends the trial court's failure to give the instruction is reversible error.

First-degree murder is killing done deliberately and with premeditation. An individual acts deliberately and with premeditation if the individual has "thought over the matter beforehand." PIK Crim. 2d 56.04(b). Second-degree murder is a lesser included offense of first-degree murder. All the elements of second-degree murder are included in the elements of first-degree murder, except the additional element of premeditation. *State v. Dixon,* 248 Kan. at 782; K.S.A. 21-3402.

Deavers testified that although he was carrying a gun, he never intended to kill the officer. The defendant stated he would not have intervened except that after Garland was down, the officer continued to beat him. It was after Garland said, "Stop, stop," that defendant took the gun out of his jacket, laid it on the seat, and told John Doyen to "Get outta here." According to the defendant, he observed Willems hit Garland one more time, then move whatever the officer was hitting his brother with to the other hand, and start to draw his gun. When defendant heard his brother say, "Don't shoot me," defendant grabbed his gun and shot at the officer, and the officer fell to the ground. After Garland got up, the defendant told him to get in the van. Deavers stated that after telling his brother to get into the van, he shot the officer in the leg to keep the officer from calling for assistance to arrest them. Deavers reasoned that wounding the officer would

allow them to escape. The defendant stated only five to seven seconds elapsed between shots.

The State's witnesses testified Willems was moving backwards around the front of the van with his hands about shoulder height. Deavers followed the officer, pointing a gun, and had both hands extended. As Willems moved backwards, he pled, "Don't shoot, don't shoot." Willems was first shot in the leg. As Willems was attempting to get up, Deavers continued to approach him. When defendant was "right on top" of the officer, he shot the officer in the head. After shooting the officer, Deavers fired shots at the witnesses. The State contends the evidence indicates the defendant either acted in defense of his brother, Garland Deavers, or premeditated the killing of the officer.

Stalking someone, firing a shot, pausing, and shooting again is evidence of premeditation. There was no substantial evidence to support a conviction of second-degree murder. The trial court did not err in refusing to give such an instruction.

## VOLUNTARY MANSLAUGHTER

K.S.A. 21-3403 defines voluntary manslaughter as the unlawful killing of a human being, without malice, which is done intentionally upon a sudden quarrel or in the heat of passion. "Heat of passion" means any intense or vehement emotional excitement of the kind prompting violent and aggressive action, such as rage, anger, hatred, furious resentment, fright, or terror. Such emotional state of mind must be of such a degree as would cause an ordinary person to act on impulse without reflection. *State v. Hill,* 242 Kan. 68, 74, 744 P.2d 1228 (1987). Defendant argues the facts indicate that the homicide resulted from the fight between the officer and Garland or that the defendant acted in the heat of passion to what he thought was the imminent slaying of his brother.

Even Deavers' testimony indicates he did not act on impulse or without reflection but took time to ponder the shooting of Willems and his escape from the area. Though there is evidence of a sudden quarrel between the victim and defendant's brother, there is no evidence that the defendant acted in the heat of passion or upon sudden impulse.

## INVOLUNTARY MANSLAUGHTER

K.S.A. 21-3404 provides that involuntary manslaughter is the unlawful killing of a human being, without malice, which is done unintentionally in the wanton commission of an unlawful act not amounting to felony, or in the commission of a lawful act in an unlawful or wanton manner. Defendant relies on the portion of the statute proscribing a killing "which is done unintentionally . . . in the commission of a lawful act in an unlawful or wanton manner."

Deavers asserts he did not intend to kill the officer, but attempted to stop the officer from killing his brother. Defendant claims the jury could have found that the killing occurred while he used unreasonable and excessive force in defense of another. He argues that, under such circumstances, the judge is required to instruct the jury on involuntary manslaughter. He asserts the judge's failure to instruct on involuntary manslaughter required the jury to find him guilty of first-degree murder or not guilty of anything and denied him the right to have the jury determine if he was guilty of the lesser degree of homicide.

A defendant may use the degree of force which reasonably appears to be necessary to repel an attack and is justified in the use of deadly force to repel deadly force. *State v. Cates,* 223 Kan. 724, 728-29, 576 P.2d 657 (1978). A review of the evidence shows that, if the jury believed the defendant's testimony, he was defending an individual whose life was being threatened by a person about to shoot him and was therefore entitled to use the degree of force necessary to repel that person. There is evidence that the killing of the officer was intentional and not a lawful act done in an unlawful or wanton manner.

The defendant in a criminal prosecution has a right to have the court instruct the jury on all lesser included offenses established by substantial evidence, however weak, unsatisfactory, or inconclusive the evidence may appear to the court. To refuse to so instruct the jury would be to invade the jury's province in the trial of a case. The question is not whether, in the mind of the court, the evidence as a whole excludes the idea that the defendant is guilty of a lesser degree of the offense charged, but whether there is any substantial evidence tending to prove a lesser degree of the offense. If there is, then the question of such

degree should be submitted to the jury. The unsupported testimony of the defendant alone, if tending to establish such lesser degree, is sufficient to require the court to so instruct.

Where there is no substantial testimony applicable to the lesser degrees of an offense, and all of the evidence taken together shows that the offense, if committed, was clearly of the higher degree, instructions relating to the lesser degrees of the offense are not necessary. *State v. Cunningham,* 120 Kan. 430, 431, 243 Pac. 1006 (1926). Since there was no substantial testimony applicable to involuntary manslaughter, the trial court did not err in failing to give such an instruction.

## 2. ERROR IN DENYING DEFENSE A CONTINUANCE.

Deavers' preliminary examination was held on June 11, 1991. Deavers was immediately bound over and arraigned. His jury trial was scheduled for July 8, 1991. In early July, the trial was continued for four weeks, at the defendant's request, to August 5, 1991. At the pretrial conference on July 31, 1991, defense counsel requested another continuance of the trial, claiming (1) there were unknown witnesses who needed to be discovered and interviewed, (2) it was possible that an expert witness was needed to examine physical evidence taken from the slain officer, and (3) the defense was awaiting medical reports on Garland Deavers' injuries. Defendant asserted to the judge that evidence was necessary for his defense, but he could not reveal its relevance because the information would apprise the State of his defense.

The judge denied the motion, noting the existence of the unknown witnesses was speculative. The judge indicated he would (1) sign whatever orders the defense required to secure medical testimony, (2) compel the presence of any defense witness at trial, and (3) give ample time to examine or cross-examine witnesses and look at or redo chemical analyses. The trial commenced on August 5, 1991.

Defendant asserts the judge's refusal to grant the continuance was unreasonable. He points out that the State had interviewed numerous witnesses. Deavers claims the defense task was made more difficult because not all of the witnesses were listed on the police reports. Under the circumstances, the defense was required to discover the unknown witnesses through investigative

efforts, luck, tips, and leads which had just begun to surface. Deavers argues the judge's refusal to grant the continuance denied him the right to fully investigate and present evidence.

The granting or denial of a continuance in a criminal case is a matter which rests in the sound discretion of the trial court. Absent a showing of prejudice to the defendant, and an abuse of the court's discretion, the ruling of the court will not be disturbed on appeal. *State v. Thompson,* 232 Kan. 364, 368, 654 P.2d 453 (1982).

Neither in the district court nor on appeal has the defendant identified any witnesses who would have testified favorably for the defendant had the requested continuance been granted. Further, Deavers has not revealed what physical evidence taken from Willems required the services of an expert witness or a need to redo chemical analyses. Under these circumstances, there has been no showing of prejudice to the defendant or showing of an abuse of discretion by the trial judge in refusing to grant the defendant an additional continuance. The issue is without merit.

## 3. POSSIBLE EVIDENCE OF THE OFFICER'S REPUTATION FOR EXCESSIVE FORCE.

Deavers complains the trial judge improperly (1) quashed his two subpoenas duces tecum for the Sedgwick County Sheriff's personnel and internal affairs files regarding the deceased officer and (2) refused to allow his witness to testify as to the character and reputation of Willems. Defendant contends these rulings prevented the defense from discovering potential evidence (through the subpoenaed files) and from presenting to the jury evidence of Willems' character and reputation. He argues the judge's rulings violated his right to compulsory process under the Sixth Amendment to the United States Constitution and § 10 of the Kansas Constitution Bill of Rights and his Fourteenth Amendment due process right to present a full defense. Defendant's argument intermingles the constitutional claims and the challenged rulings.

Where self-defense is an issue in a homicide case, evidence of the turbulent character of the deceased is admissible. Such evidence may consist of the general reputation of the deceased in the community, but specific instances of misconduct may be

shown only by evidence of a conviction of a crime. *State v. Mason,* 208 Kan. 39, Syl. ¶ 1, 490 P.2d 418 (1971).

When a person's character or a trait of his or her character is in issue, it may be proved by testimony in the form of opinion, evidence of reputation, or evidence of specific instances of the person's conduct, subject, however, to the limitations of K.S.A. 60-447. K.S.A. 60-446. When a trait of a person's character is relevant as tending to prove conduct on a specified occasion, such trait may be proved in the same manner as provided by K.S.A. 60-446, except that evidence of specific instances of conduct other than evidence of conviction of a crime which tends to prove the trait to be bad shall be inadmissible. K.S.A. 60-447.

The defendant issued a subpoena duces tecum for all personnel records and internal affairs files concerning the deceased officer. The Sedgwick County sheriff objected to the subpoenas. The matter was heard at a recess during the trial. At the hearing, defense counsel asserted he needed the records to show that Willems was not acting within the law when the incident occurred. To show it was necessary to review the files, defense counsel cited a newspaper article which indicated "Willems was put on suspension, something to do with marijuana in the jail . . . and then he was placed back on the force." Defense counsel also noted "a police report from a case in which a person at the hospital was working with another youth who had been beaten by a club while being handcuffed, the officer involved in that was Christopher Willems." Defense counsel observed this evidence was hearsay and could only be presented to the jury through the subpoenaed records.

In arguing against the subpoenas, the attorney representing the sheriff's department noted the confidential nature of the files and indicated that under K.S.A. 45-221(4) of the Open Records Act, personnel files generally are not required to be disclosed. The prosecutor argued such evidence is inadmissible under K.S.A. 60-447 which, except for convictions of a crime which tends to show a bad trait, prohibits evidence of specific incidents of conduct to prove a person's conduct on a particular date.

The judge instructed the prosecutor to find whether criminal charges had ever been filed against the officer. The court then took the officer's personnel file and the internal affairs files to

inspect in camera for information that might possibly be used for any purpose whatsoever by the defense. The next morning, the prosecutor informed the court she found no record of arrest or conviction for the victim. The court stated it found "nothing [in the files] relevant, [or] anything that might lead to anything relevant." The court sustained the objections to the subpoenas.

Defendant notes that the State has a duty to disclose exculpatory evidence. As to violation of his Sixth Amendment right to compulsory process and Fourteenth Amendment due process right to present his defense, Deavers points out that the test for permitting discovery is not whether the evidence sought is admissible, but whether it appears reasonably calculated to lead to the discovery of admissible evidence. *Jones v. Bordman*, 243 Kan. 444, 455, 759 P.2d 953 (1988). He asserts that under the circumstances defense counsel had shown the need for inspection, and to require more to allow the defense the right to review the files was unreasonable.

There is nothing in the trial record indicating that the subpoenaed files contained evidence of Willems' reputation for violence and excessive force. Most of the defendant's argument is based on what might have been in the subpoenaed records. Both the trial judge and this court have viewed the files in camera and found nothing relevant to Deavers' defense. There is no showing of any constitutional violations or an explanation how his argument is related to the constitutional claims.

After defendant testified on his own behalf, defense counsel attempted to call a witness to testify as to the character and reputation of Willems. A signed affidavit prepared at noon that day by the chief investigator of the Sedgwick County Public Defender's Office was proffered to the court. The court refused to admit the affidavit into evidence because the affidavit contained no evidence of conviction of a crime tending to prove the officer's trait to be bad, as required by K.S.A. 60-447. Defendant claims that the jury should have been informed of the officer's reputation for violence under K.S.A. 60-446, notwithstanding the limitations of K.S.A. 60-447.

The effect of K.S.A. 60-446 and 60-447 is to make opinion testimony and testimony available as proof of a person's bad character which is relevant, but to reject evidence of specific instances

of conduct except evidence of convictions for a crime. It is the circumstantial proof of conduct of the person that is in question, not the credibility of the witness.

Officer Willems had no criminal convictions; therefore, the defendant was limited to proving his character or reputation by opinion evidence. The only witness the defense counsel intended to call in an attempt to present evidence of Willems' reputation was an investigator from his office. There is no indication the investigator was personally acquainted with Willems. Rather, her information was based on limited contact with third persons who also had only limited contact with Willems.

When a witness has insufficient knowledge on which to base an opinion, the opinion testimony is so conjectural it lacks probative value and may be properly excluded by the trial court. *State v. Richard,* 235 Kan. 355, 361, 681 P.2d 612 (1984). The witness had insufficient knowledge on which to base an opinion regarding Willems' reputation or character. This issue is without merit.

4. WHETHER THE TRIAL COURT ERRED IN ITS INSTRUCTION ON A LAW ENFORCEMENT OFFICER'S USE OF DEADLY FORCE.

K.S.A. 1991 Supp. 21-3215 (1) provides:

"(1) A law enforcement officer . . . making a lawful arrest, need not retreat or desist from efforts to make a lawful arrest because of resistance or threatened resistance to the arrest. Such officer is justified in the use of any force which such officer reasonably believes to be necessary to effect the arrest and of any force which such officer reasonably believes to be necessary to defend the officer's self or another from bodily harm while making the arrest. However, *such officer is justified in using force likely to cause death or great bodily harm only when* such officer reasonably believes that such force is necessary to prevent death or great bodily harm to such officer or another person, or when *such officer reasonably believes that such force is necessary to prevent the arrest from being defeated by resistance or escape and the person to be arrested* has committed or attempted to commit a felony involving great bodily harm or is attempting to escape by use of a deadly weapon, or *otherwise indicates that such person will endanger human life or inflict great bodily harm unless arrested without delay.*" (Emphasis added.)

The trial court gave the following instruction on use of force by a law enforcement officer in effecting an arrest:

"A law enforcement officer need not retreat or desist from the efforts to make a lawful arrest because of resistance or threatened resistance to the arrest. He is justified in the use of any force which he reasonably believes to be necessary to defend himself from bodily harm while making the arrest.

"However, he is justified in using force likely to cause death or great bodily harm only when he reasonably believes that such force is necessary to prevent death or great bodily harm to himself, *or is necessary to prevent the arrest from being defeated by resistance or escape and the person to be arrested indicates that he will endanger life or inflict great bodily harm unless arrested without delay.*

"A person is not authorized to use force to resist an arrest which he knows is being made by a law enforcement officer." (Emphasis added.)

Defendant contends that (1) the italicized portion of the instruction informed the jury that the officer was justified in his use of force likely to cause death or great bodily injury if the jury found Garland was attempting to prevent his arrest by resistance or escape, regardless of whether he had committed or was attempting to commit a felony and (2) the instruction omits that part of the statute which states that deadly force, or force likely to cause great bodily harm, is justified to prevent the escape only when the escape is effected by use of a deadly weapon.

Deavers argues that because the instruction does not distinguish between the use of reasonable force by an officer to defend himself and the use of deadly force for other purposes, it misstates the law. He asserts the instruction negates the defendant's right to defend another by implying the officer had the right to kill Garland if he was attempting to escape or prevent his arrest. He contends that the instruction as given lessened the State's burden of proof and erroneously states an officer's authority to use force. He concludes a proper instruction would first require the jury to find that Garland had committed or was attempting to commit a felony or attempting to escape by use of a deadly weapon.

Deavers asserts 21-3215 does not permit a law enforcement officer who is making an arrest for a misdemeanor to use such force as is likely to cause death or great bodily harm, but that the force used here was likely to and did cause great bodily harm as a matter of law. As we view 21-3215(1), it follows the majority rule concerning arrests of misdemeanants. It allows a law en-

forcement officer to use any force he or she believes necessary to effect an arrest, but prohibits the use of force which is likely to cause death or great bodily harm except to prevent death or great bodily harm to the officer or another person (the effect is a liberalized self-defense rule), or unless the suspect is attempting to escape by the use of a deadly weapon or otherwise indicates he or she will endanger human life or inflict great bodily harm unless arrested without delay. The purpose of the statute is to set limits for law enforcement officers. *Dauffenbach v. City of Wichita,* 233 Kan. 1028, 1036-37, 667 P.2d 380 (1983).

Deavers' analysis of this issue focuses only on the action of the officer in attempting to arrest his brother. He fails to note that after the officer was no longer a threat to his brother, he intentionally shot the officer with the intent to inflict great bodily harm upon the officer to keep the officer from preventing their escape.

A law enforcement officer is justified in using force likely to cause death or great bodily harm when such officer reasonably believes that such force is necessary to prevent the arrest from being defeated by resistance or escape and the person to be arrested otherwise indicates that such person will endanger human life or inflict great bodily harm unless arrested without delay. The jury heard the testimony of the defendant and the witnesses for the state. The jury determined that the officer under the circumstances was not using excess force or that the officer had used no force. Under either finding, the defendant's contentions are without merit.

## 5. USE OF THE OFFICER'S FORMAL IDENTIFICATION PHOTOGRAPH.

A sheriff's department identification photo of Officer Willems was introduced into evidence without objection and placed on a cork board for the jury to view. The pathologist was the next witness. Defense counsel objected to leaving the photograph on the corkboard during testimony about the autopsy, claiming it played on the jury's emotion. The judge overruled Deavers' objection without comment. During the course of the pathologist's testimony, the prosecutor placed several autopsy photographs on the corkboard. All the photos on the corkboard were admitted into evidence.

Defendant contends that the continued display of the officer's identification photograph to the jury during the presentation of the State's autopsy evidence denied him his right to a fair trial. Deavers asserts the trial judge's refusal to remove the identification photograph condoned the State's attempt to inflame the passions of the jury. He argues the juxtaposition of the identification photograph to the gruesome autopsy photographs shocked the jury and played on the jurors' emotions.

Deavers' argument rests on speculation that the identification photograph of the officer and the photographic evidence of the autopsy shocked the jurors and played on their emotions. All of the photos were to be sent to the jury room for the jury's review. At that time, the jury could arrange the pictures as it desired. Defendant fails to show actual prejudice by the display of the photographs.

The admission of photographic evidence lies within the sound discretion of the trial court. *State v. Hedger,* 248 Kan. 815, 822, 811 P.2d 1170 (1991). It also follows that the manner of exhibiting admitted photographs to the jury rests within the sound discretion of the trial court. There is no evidence that the court abused its discretion in allowing the jury to view the identification photograph of Willems in conjunction with the autopsy photographs.

## 6. THE TRIAL JUDGE'S FAILURE TO INSTRUCT THE JURY ON EYEWITNESS IDENTIFICATION.

Defendant contends that because the prosecution's case relied heavily upon eyewitness testimony, the failure to give an eyewitness instruction constitutes reversible error.

PIK Crim. 2d 52.20, the instruction on eyewitness identification, states:

"The law places the burden upon the state to identify the defendant. The law does not require the defendant to prove he has been wrongly identified. In weighing the reliability of eyewitness identification testimony you first should determine whether any of the following factors existed and if so the extent to which they would affect accuracy of identification by an eyewitness. Factors you may consider are:

1. The opportunity the witness had to observe. This includes any physical condition which could affect the ability of the witness to observe, the length of the time of observation, and any limitations on observation like an obstruction or poor lighting.

2. The emotional state of the witness at the time including that which might be caused by the use of a weapon or a threat of violence.
3. Whether the witness had observed the defendant[s] on earlier occasions.
4. Whether a significant amount of time elapsed between the crime charged and any later identification.
5. Whether the witness ever failed to identify the defendant[s] or made any inconsistent identification.
6. The degree of certainty demonstrated by the witness at the time of any identification of the accused.
7. Whether there are any other circumstances that may have affected the accuracy of the eyewitness identification."

In any criminal action in which eyewitness identification is a critical part of the prosecution's case and there is a serious question about the reliability of the identification, a cautionary instruction should be given advising the jury as to the factors to be considered in weighing the credibility of the eyewitness identification testimony. *State v. Warren,* 230 Kan. 385, 397, 635 P.2d 1236 (1981).

Deavers acknowledges that there was no question that he shot and killed Willems. Although there is no question relating to misidentification by an eyewitness, defendant contends that instruction was necessary because the factors addressed by the instruction were relevant to the weight the eyewitness accounts should be given to the jury. Deavers asserts that there is no valid reason to distinguish between eyewitness identification of a person and testimony by an eyewitness about events observed by the witness. Defendant claims that this is especially true when there is a question about the reliability of an eyewitness regarding his or her observations.

Defendant argues:

"Ms. Oaks testified that she saw the shooter, *i.e.,* Fred, hold the gun with both hands and shoot the officer, run between the van and police car, come back and point the gun at the officer's head and pull the trigger before getting in the van and driving off. Her testimony is questionable as it fails to take into account the evidence that John Doyen was back by the officer's car when he ran away, or the presence of Garland. She stated she saw someone on the passenger side run away after the first shot, but did not mention a third person. Channon Brown thought he saw two men approaching the officer before the first shots, and stated the lighting made things hard to see. Aaron Burdick and Melanie Barrientos also gave different accounts of the events which they observed.

"In considering all of the varying accounts, the jury would have been aided by the eyewitness instruction. This instruction offered guidance by which to assess the accuracy of the eyewitness observations and could have helped to create reasonable doubt as to the claims of the prosecution."

The defendant contends a modified eyewitness identification instruction should be given whenever there is conflicting evidence by witnesses to a crime.

It is not unusual that witnesses view the same incident differently. Under our system, each witness states what the witness observed and the jury determines the facts based on all the evidence adduced during the trial. Jurors are commonly called upon to resolve conflicting testimony of an event which is not associated with the problem of eyewitness identification.

The trial judge instructed the jury:

"It is for you to determine the weight and credit to be given the testimony of each witness. You have a right to use common knowledge and experience in regard to the matter about which a witness has testified."

The instruction given by the judge correctly requires the jurors to use their common knowledge in resolving conflicting accounts of the same event. Defendant has failed to show a need for an instruction to be given when there is not a serious question of the identification of the perpetrator of a crime and has failed to provide any legal authority for that position. This issue is without merit.

## 7. IMPROPERLY INSTRUCTING THE JURY AS TO ITS DUTIES.

During voir dire the jury was informed that it could recommend a mandatory 40-year sentence. Later, the judge instructed the jury:

"Your only concern in this case is determining whether the defendant is guilty or not guilty. The disposition of the case thereafter is a matter for determination by the Court."

Defense counsel did not object to this instruction. No party may assign as error the giving or failure to give an instruction unless he or she objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he or she objects and the grounds of the objection, unless the instruction is clearly erroneous. K.S.A. 22-3414(3). An instruction is clearly erroneous

only if the reviewing court reaches a firm conviction that if the trial error had not occurred there is a real possibility the jury would have returned a different verdict. See *State v. DeMoss,* 244 Kan. 387, 391-92, 770 P.2d 441 (1989).

Deavers contends this instruction is not appropriate when the State invokes the mandatory 40-year sentence because the jury is additionally required to determine its recommended sentence or disposition. Defendant claims the instruction creates two problems: (1) It tells the jury that its only concern is to determine whether Deavers was guilty or not guilty, and (2) it fails to inform the jurors of their role regarding the imposition of a mandatory 40-year sentence. He surmises that the jury may have believed if it returned a verdict of guilty, it had no duty to determine the punishment. He asserts that belief made it easier for the jury to agree on a guilty verdict. In addition, Deavers claims that the instruction influenced the jury's decision to recommend a mandatory 40-year term.

Defendant's arguments are mere speculation and are not supported by fact. The instruction correctly stated the law. Under the facts there is no possibility the jury would have returned a different verdict or failed to recommend the punishment had the instruction not been given. This issue is without merit.

8. THE COURT IMPROPERLY IMPOSED THE MANDATORY 40-YEAR TERM OF IMPRISONMENT AFTER THE STATE FAILED TO GIVE PROPER NOTICE AT THE ARRAIGNMENT.

Deavers was sentenced, pursuant to K.S.A. 1991 Supp. 21-4628, the first-degree murder "hard-40" sentencing statute, to imprisonment for life with no eligibility for parole prior to serving 40 years' imprisonment.

K.S.A. 1991 Supp. 21-4624(1) provides:

"If a defendant is charged with murder in the first degree, the county or district attorney shall file written notice if such attorney intends, upon conviction or adjudication of guilt of the defendant, to request a separate sentencing proceeding to determine whether the defendant should be required to serve a mandatory term of imprisonment of 40 years. Such notice shall be filed with the court and served on the defendant or the defendant's attorney at the time of arraignment. *If such notice is not filed and served as required by this subsection, the county or district attorney may not*

*request such a sentencing proceeding and the defendant, if convicted of murder in the first degree, shall be sentenced as otherwise provided by law, and no mandatory term of imprisonment shall be imposed hereunder."* (Emphasis added.)

Defendant contends the trial court erred in allowing the State to seek a mandatory 40-year term of imprisonment after it failed to comply with the statutory requirement that notice must be given at arraignment.

Defendant was arraigned following the preliminary hearing on June 11, 1991. After Deavers was served with a copy of the information charging him with murder in the first degree, he pled not guilty and requested a jury trial. The judge set the trial for July 8, 1991, and then asked the State and the defendant whether there was anything else that needed to be accomplished. The prosecutor and the defense counsel each indicated there were no further matters to bring before the court at that time. The judge concluded the arraignment and adjourned for the noon recess.

At 2:00 p.m. that day, at the prosecutor's request, the parties again appeared before the court. The prosecutor informed the judge that during the arraignment she had forgotten to give the defendant notice of the State's request for a 40-year mandatory term when she handed a copy of the information to him. She then handed defendant a copy of the notice. Defense counsel objected, arguing (1) the arraignment had been concluded, (2) the prosecutor had stated she had no further business, and (3) the statute requires that notice be filed with the court and served on the defendant at the arraignment; therefore, the prosecution had failed to comply with the requirement. The prosecutor responded that when she realized she had forgotten to hand the notice to Deavers, she notified the judge and defense counsel. Deavers had received notice less than an hour after the arraignment had ended. The prosecutor argued the failure to strictly comply with the statute did not prejudice the defendant. The judge stated that the statute was clear but, without stating why, found that the State's failure to comply with the statute's notice requirement was excusable neglect and permitted the State to serve notice subsequent to the defendant's arraignment.

Defendant notes that courts must strictly construe penal statutes in favor of an accused. *State v. Magness,* 240 Kan. 719, 721, 732 P.2d 747 (1987). He argues the clear language of 21-4624(1) requires notice to be filed with the court and served on the defendant at the arraignment. This was not done.

Defendant first argues that notice is required to be served at the defendant's initial appearance when he is informed that he is charged with first-degree murder and again at the arraignment.

The State concedes that K.S.A. 1991 Supp. 21-4624(1) requires notice to be served on the defendant "at the time of arraignment" and the notice was not served on Deavers "at the time of arraignment." The State claims its failure to strictly comply with the statute was harmless error because defendant received notice in time to take any action necessary. The State asserts, except for the enhanced sentence, there was no prejudicial impact on defendant's preparation for trial, the presentation of a defense, or at his sentencing.

Whether language in a statute is mandatory or directory is to be determined on a case-by-case basis and the criterion as to whether a requirement is mandatory or directory is whether compliance with such requirement is essential to preserve the rights of the parties. *Griffin v. Rogers,* 232 Kan. 168, 174, 653 P.2d 463 (1982). In determining whether a legislative provision is mandatory or directory, it is a general rule that where strict compliance with the provision is essential to the preservation of the rights of parties affected and to the validity of the proceeding, the provision is mandatory, but where the provision fixes a mode of proceeding and a time within which an official act is to be done, and is intended to secure order, system, and dispatch of the public business, the provision is directory. Factors which would indicate that the provisions of a statute or ordinance are mandatory are: (1) the presence of negative words requiring that an act shall be done in no other manner or at no other time than that designated, or (2) a provision for a penalty or other consequence of noncompliance. *Paul v. City of Manhattan,* 212 Kan. 381, Syl. ¶¶ 1, 2, 511 P.2d 244 (1973).

We recognize that K.S.A. 1991 Supp. 21-4624(1) contains a "penalty or other consequence of noncompliance" provision. It states: "If such notice is not filed and served as required by this

subsection, the county or district attorney may not request such a sentencing proceeding and the defendant, if convicted of murder in the first degree, shall be sentenced as otherwise provided by law, and no mandatory term of imprisonment shall be imposed hereunder." Prejudice to the defendant is indisputable. If the State is permitted to serve notice outside the limits of the statute, Deavers is subject to the enhanced sentence.

The requirement is mandatory. The State failed to follow the clear requirement of the statute. If 2 hours and 20 minutes beyond the requirement of the statute is acceptable, at what time beyond the statutory requirement does a court determine failure to comply with the statute is unacceptable? Defendant's sentence is vacated, and the case is remanded for resentencing as required by K.S.A. 1991 Supp. 21-4624(1).

Conviction affirmed, sentence vacated, and remanded for resentencing.