NOT DESIGNATED FOR PUBLICATION

No. 113,454

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

MONTA BROOKS aka MANTA BROOKS,
*Appellant*.

MEMORANDUM OPINION

Appeal from Reno District Court; TIMOTHY J. CHAMBERS, judge. Opinion filed February 5, 2016.
Affirmed.

*Janine Cox*, of Kansas Appellate Defender Office, for appellant.

*Keith E. Schroeder*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before BRUNS, P.J., MCANANY, J., and JOHNSON, S.J.

*Per Curiam*: Monta Brooks appeals the district court's order denying his K.S.A. 60-1507 motion after an evidentiary hearing. At the end of the hearing, the district court denied the motion and stated its reasons for doing so on the record. Brooks contends on appeal, however, that the district court did not enter sufficient findings of fact and conclusions of law following the hearing. Brooks further contends that his trial counsel was ineffective in several respects. Based on our review of the record, we conclude that the district court adequately explained its reasons for denying Brooks' K.S.A. 60-1507 motion and that Brooks has failed to demonstrate that his trial counsel was ineffective. Thus, we affirm.

1

In his direct appeal, a panel of this court explained the facts of Brooks' underlying criminal case. *State v. Brooks*, No. 105,358, 2012 WL 309075 (Kan. App. 2012) (unpublished opinion), *rev. denied* 296 Kan. 1131 (2013). For the purposes of this appeal, we note that Brooks was an inmate at the Hutchinson Correctional Facility (HCF). While incarcerated at HCF, Brooks was involved in an incident that led to him being convicted in September 2010 of one count of battery against a corrections officer and two counts of criminal threat. It is his 2010 conviction that is the subject of his current K.S.A. 60-1507 motion.

From the facts set forth in the opinion issued in Brooks' direct appeal, we glean that on the evening of July 6, 2009, Brooks refused to leave the chow hall after a corrections officer ordered him to do so because he had finished eating. After writing a disciplinary report, the officer went to Brooks' cell to return his inmate identification badge. When the officer arrived at the cell, Brooks was holding a mirror through the bars so he could see down the corridor. The officer told Brooks that inmates were not allowed to use mirrors in this manner. Brooks responded by taking his identification badge, pulling the mirror inside his cell, and spitting on the corrections officer.

The next day, Brooks submitted two inmate request forms. In each, Brooks threatened to kill the corrections officer who he had spit on as well as another corrections officer who Brooks was upset with over an unrelated incident. Subsequently, the State filed a criminal complaint in which it charged Brooks with one count of battery against a corrections officer—based on the spitting incident—and two counts of criminal threat— based on the threats to kill the two corrections officers.

The district court conducted a jury trial on September 28, 2010, during which several witnesses testified for the State. The State also admitted into evidence the two

inmate request forms and two videos showing Brooks' interaction with the correction officer at his cell. The videos were of such low quality that they only depicted Brooks leaning toward the corrections officer but did not clearly show him spitting on the officer. Brooks did not testify, call any witnesses, or present any evidence at trial. After deliberation, a jury convicted Brooks on all counts.

On January 27, 2012, a panel of this court found that there was sufficient evidence to sustain Brooks' convictions. Thereafter, Brooks filed a petition for review. The following year, on February 4, 2013, the Kansas Supreme Court denied Brooks' petition for review, and a mandate was subsequently entered on February 5, 2013.

On January 15, 2014, Brooks filed a "motion to vacate and set aside conviction and grant new trial," which the district court appropriately treated as a K.S.A. 60-1507 motion. See *State v. Holt*, 298 Kan. 469, 480, 313 P.3d 826 (2013). Although Brooks alleged several errors in his motion, he later agreed that the only issues properly before the district court were his claims of ineffective assistance of trial counsel. More specifically, Brooks claimed that during voir dire, several jurors made statements suggesting that they were unable to impartially decide his case and that his trial counsel—Bonnie Corrado—permitted the State to "stack the jury" in its favor. He further claimed that his trial counsel failed to inform him of his "right to call witnesses" to testify on his behalf at trial.

Two days after Brooks filed his K.S.A. 60-1507 motion, the district court appointed counsel to represent him. Shortly thereafter, the district court set the motion for an evidentiary hearing. On May 30, 2014, the same district judge who had conducted the jury trial in the underlying criminal case presided over the evidentiary hearing on Brooks' K.S.A. 60-1507 motion.

3

At the beginning of the evidentiary hearing, the district court sought to confirm whether Brooks had voluntarily waived the attorney-client privilege so that Corrado could testify about her representation; specifically, the transcript of the proceeding indicates the following exchange between Brooks and the district court:

"THE COURT:  Mr. Brooks, based upon your motion, are you waiving any attorney/client privilege you have in relation to Ms. Corrado's representation of you?

"THE DEFENDANT:  Need to break it down because I'm fully not comprehending right now.

"THE COURT:  There's a privilege that says statements between a[n] attorney and their client are privileged.

"THE DEFENDANT:  Uh-huh.

"THE COURT:  Ms. Corrado was your attorney. She cannot be questioned about what was spoke between you and her unless you waive that privilege.

"THE DEFENDANT:  As in when, I assume you say I waive it I'm assuming I can't, we can't discuss that. That's what you're saying, right?

"THE COURT:  No, I just need to know are you waiving the privilege of counsel/client privilege or not, yes or no.

"THE DEFENDANT:  No.

"THE COURT:  It's not a difficult question.

"THE DEFENDANT:  No, no.

4

"THE COURT: Okay. Then we're not going to proceed because Ms. Corrado cannot be examined or cross-examined in regards to anything in relation to contacts between Mr. Brooks and her.

"THE DEFENDANT: That's kind of funny because—

"THE COURT: No, I didn't ask you to talk. You only talk if I ask you to talk. You have an attorney.

"[Counsel for Defendant]: Judge, can I have a moment?

"THE COURT: Yes, you may . . .

"THE DEFENDANT: I want to check that man because—

"THE COURT: No, you do not—listen to me, sir. You do not talk.

"THE DEFENDANT: Watch who you're talking to.

"THE COURT: Okay. One more time that you talk when I tell you not to talk you're going to be taken back to the prison and we're going to continue the hearing without your presence.

(Counsel and defendant confer out of the hearing of the reporter.)

"[Counsel for Defendant]: You got to tell the court that.

"The Defendant: Yeah, man, I waive it.

"THE COURT: Thank you, Mr. Brooks.

. . . .

5

"THE COURT: Mr. Brooks, we're not—okay. Take him back to prison because the defendant is making sexual gestures from his chair, he's indicating he's not going to participate.

"THE DEFENDANT: Hell, that's a sexual gesture, man. You's a bitch, man. Here's your pen, man. He's a straight bitch, a real bitch. Ah, he's a pussy, man. Don't worry about it, I'll be out in 10 years, man. I'll see you then. I got 13 more years left.

(The defendant is removed from the courtroom.)

"THE COURT: The court will find the defendant has voluntarily absenced [*sic*] himself from the proceedings by his conduct, by his language, and his actions. In the court's view he was simulating masturbation as he was sitting at counsel table."

Following Brooks' removal from the courtroom, Corrado testified about her representation during the underlying criminal case. Because it had been nearly 4 years since she had represented Brooks, Corrado understandably had a difficult time recalling some of the details of her representation. Corrado recalled meeting with Brooks twice before trial while he was in a segregation unit at El Dorado Correctional Facility (EDCF). She recalled taking a laptop with her on one occasion to allow Brooks to watch the video of the incident and that she met with him "quite a while that day" to discuss court procedures and trial tactics. More specifically, Corrado spoke with Brooks regarding how she would approach his defense at trial. She also recalled that Brooks had requested the personnel files of both corrections officers. Specifically, she testified:

"A. I believe I requested personnel files. I know I have requested them in, in cases for them to be viewed in camera by the judge and often there's nothing in them of, that we could use.

"Q. Okay.

6

"A. Now, specific to his case I can't remember if I did that or not. I would have to, like, go through the file and see if I, if I filed that."

When asked about the process of jury selection, Corrado testified that she always gives her client a copy of the juror seating chart and a pen. She also asks them to take notes and to let her know the jurors they wish to strike. Corrado confirmed that this occurred in Brooks' case, and she produced Brooks' copy of the seating chart, which contained the notes he had taken during voir dire. According to Corrado, "before I ever made any decision on which person to strike or not it would ultimately be my client's decision. I have never overruled my client's decision on their request." Upon further questioning on the matter, she explained her theory on client involvement during voir dire as follows:

"A. [M]y theory behind it is it's his trial/her trial, they suffer the consequences, they need to have decision making. Of course I guide them, my education and experience, and I will give them my opinion on their chosen person, but ultimately if they say no, I want that person or I don't want that person, they make the decision."

Corrado further testified that she remembered Brooks telling her about prior altercations he had with the corrections officer he was accused of spitting on, but she could not recall questioning the corrections officer during trial about the other incidents.

Corrado remembered Brooks asking her to subpoena fellow inmates who may have witnessed the altercation with the corrections officer, but she testified that Brooks did not provide her with any of the inmates' names. She also testified that she spoke with someone at the department of corrections over the phone in an attempt to identify the inmates who may have witnessed the incident. According to Corrado, the person she spoke to at the department of corrections told her that it did not have a record of the cells in which inmates were housed on a particular date. During cross-examination, Corrado testified that she diligently tried to identify and locate other inmates to testify on Brooks'

7

behalf. She also testified that she spoke with Brooks before and during trial about his right to testify at trial, but she believed that he had chosen not to testify.

After Corrado finished testifying, Brooks' counsel advised the district court that Brooks had intended to testify at the evidentiary hearing before he was removed from the courtroom. However, counsel stated that he was unsure whether Brooks would cooperate in giving his testimony if he were brought back to the courtroom. The district court then mentioned the possibility of permitting Brooks to testify by video, but the State argued that Brooks had waived his right to testify by his conduct at the evidentiary hearing. The district court ultimately instructed Brooks' counsel to contact his client and tell him that if he apologized, he could testify via Skype. The district court stated, however, that if Brooks did not apologize, it would proceed to rule on the motion.

On October 24, 2014, the district court resumed the evidentiary hearing. At the beginning of the hearing, Brooks' counsel informed the district court that he had spoken with his client but that Brooks refused to apologize because he did not believe he did anything wrong. He also reported that he told Brooks the district court would conclude the hearing and rule on the motion if he did not apologize, to which Brooks responded he was "fine with."

The district court stated on the record that it had been contacted by the department of corrections prior to the hearing on May 30, 2014, which told the court that it would have had to transport Brooks individually for the hearing because of several problems he had caused since being incarcerated. The district court further stated that "in this year alone [Brooks] had 14 disciplinary hearings: avoiding an officer, assault, four disobeying orders, two disrespects, one threatening an officer, one battery, one arson, and one additional hearing, or disciplinary conviction. That doesn't count the numerous disciplinary convictions he's had since he entered in prison in 2008." The district court also pointed out that it had tried to resolve the matter by permitting Brooks to apologize.

8

Under the circumstances, the district court found that Brooks had voluntarily excused himself from the evidentiary hearing by his inappropriate actions.

Thereafter, the district court then denied the K.S.A. 60-1507 motion. In support of the denial, the district court stated on the record that Corrado's performance was not constitutionally deficient, and even if it could be construed as such, it was only because she may have relied too much on her client. The district court also found that even if Brooks had met the first prong of the *Strickland* test, he was not prejudiced by Corrado's performance at trial. The district judge stated that he recalled the evidence he had heard while presiding over the jury trial in the underlying criminal case and remembered that "there was more than sufficient evidence to support" the jury verdict and that it was not "a close case."

Brooks subsequently filed a notice of appeal, which became timely on November 3, 2014, when the district court filed a Journal Entry denying Brooks' K.S.A. 60-1507 motion. See Supreme Court Rule 2.03(a) (2015 Kan. Ct. R. Annot. 13); *State v. Hall*, 298 Kan. 978, 988, 319 P.3d 506 (2014).

## ANALYSIS

*Compliance with Kansas Supreme Court Rule 183(j)*

On appeal, Brooks first contends that the district court did not make sufficient findings of fact and conclusions of law as required by Kansas Supreme Court Rule 183(j) (2015 Kan. Ct. R. Annot. 271). In response, the State contends that when the district court's journal entry and statements from the bench are viewed together, they were sufficient. Our review of whether the district court complied with Supreme Court Rule 183(j) is de novo. See *Robertson v. State*, 288 Kan. 217, 232, 201 P.3d 691 (2009).

9

If—taken together—a district court's oral expressions at the time of the hearing and its subsequent findings and conclusions in a journal entry are sufficient for an appellate court to consider an appellant's arguments, then remand is not necessary. See *Robertson*, 288 Kan. at 232-33. "'"[M]eaningful appellate review is precluded where a trial court's findings of fact and conclusions of law are inadequate to disclose the controlling facts or basis for the court's findings."'" *State v. Rodriguez*, 302 Kan. 85, 91, 350 P.3d 1083 (2015) (quoting *State v. Hoge*, 283 Kan. 219, 221-22, 150 P.3d 905 [2007]).

Brooks argues that the district court "articulated no conclusions of law except to misstate the second prong of the *Strickland* test." This is incorrect. At the conclusion of the evidentiary hearing, the district court stated on the record:

> "The court has heard closing argument. The ineffective assistance of counsel, the standards are well known going back to the Strickland and the United States Supreme Court. It's been adopted and followed numerous times in the Kansas appellate courts. It's a two prong test: was the performance deficient, using a[n] objective standard. The court will find based upon the evidence presented from trial counsel that the performance was not deficient. That, in fact, if trial counsel made an error it was probably because relying too much on the advice of Mr. Brooks on how he wanted decisions to be made. But the court will find the first prong has not been met.

> "And that even if the first prong were met, under the second prong the court must find the, there's a deficient performance prejudiced the defendant to a reasonable degree of probability. The court will find even if the first prong was met, the second prong was not met. Also having heard the jury trial and the evidence, that in fact there was more than sufficient evidence to support the jury, their verdict. The court did not find it to be a close case, and therefore the motion, or the habeas corpus petition is denied."

The district court's subsequent journal entry stated that Brooks had voluntarily absented himself from the hearing by way of his conduct. It also stated that "[b]ased on

10

the evidence presented, the court denies the defendant's Petition under K.S.A. 60-1507 due to ineffective assistance of counsel." Although the district court certainly could have entered a more detailed journal entry, we find no reversible error because the district court's explanation of its ruling on the record at the conclusion of the evidentiary hearing provides a sufficient basis for appellate review. See *Robertson*, 288 Kan. at 232-33 (holding that the district court's "sparse" findings and conclusions were adequate to permit appellate review in light of the district judge's additional statements at the hearing); *Horn v. State*, No. 111,069, 2014 WL 7653863, at *4 (Kan. App. 2014) (unpublished opinion), *rev. denied* 302 Kan. ___ (August 20, 2015) (same).

In addition, Brooks' counsel did not object to a perceived failure to make sufficient findings or conclusions. When no objection is made to a district court's inadequate findings of fact or conclusions of law, we may presume that the district court found all facts necessary to support its judgment. See *Phillips v. State*, 282 Kan. 154, 179, 144 P.3d 48 (2006); *Moore v. State*, No. 110,390, 2015 WL 249840, at *2 (Kan. App.) (unpublished opinion), *rev. denied* 302 Kan. ___ (August 20, 2015). This is especially true in this case because the same judge who presided over Brooks' criminal case heard his K.S.A. 60-1507 motion. See *Gilkey v. State*, 31 Kan. App. 2d 77, 78, 60 P.3d 351 (2003); see also *Wilkins v. State*, 286 Kan. 971, 988, 190 P.3d 957 (2008) ("We have previously observed that substantial questions of fact about the performance of trial counsel 'can best be evaluated by the judge who presided at trial.'"). Thus, we conclude that when considering the district court's oral expressions explaining its reasons for denying Brooks' K.S.A. 60-1507 motion along with the journal entry, we are able to conduct meaningful appellate review.

*Alleged Ineffective Assistance of Counsel*

Brooks next contends that the trial counsel in his underlying criminal case was ineffective. As indicated above, Brooks makes four allegations of ineffective assistance

11

of trial counsel. In response, the State contends that Brooks has failed to establish that his trial counsel's assistance was ineffective. Moreover, the State asserts that there is nothing in the record to suggest that Brooks was prejudiced by the legal representation he was provided in the underlying criminal case.

Both our federal and state constitutions guarantee the right of a criminal defendant to the effective assistance of counsel. *State v. Brown*, 300 Kan. 565, 574-75, 331 P.3d 797 (2014). To establish ineffective assistance of counsel, the defendant must show (1) that counsel's performance was constitutionally deficient, which requires a showing that counsel made errors so serious that his or her performance was less than that guaranteed by the Sixth Amendment to the United States Constitution; and (2) that counsel's deficient performance prejudiced the defense, which requires a showing that counsel's errors were so severe as to deprive the defendant of a fair trial. See *State v. Coones*, 301 Kan. 64, 70, 339 P.3d 375 (2014).

Under the first prong, a defendant must show that counsel's representation fell below an objective standard of reasonableness. *State v. Betancourt*, 301 Kan. 282, 306, 342 P.3d 916 (2015). In doing so,

> "'[j]udicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. [Citation omitted.] A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy." [Citation omitted.] There are countless ways to provide

effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way. [Citation omitted.]'" *Coones*, 301 Kan. at 70 (quoting *Strickland v. Washington*, 466 U.S. 668, 689, 104 S. Ct. 2052, 80 L. Ed. 2d 674 [1984]).

See *State v. Kelly*, 298 Kan. 965, 970, 318 P.3d 987 (2014).

Under the second prong, a defendant must demonstrate "'a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. A court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury.'" *Edgar v. State*, 294 Kan. 828, 838, 283 P.3d 152 (2012) (quoting *Bledsoe v. State*, 283 Kan. 81, 90-91, 150 P.3d 868 [2007]).

Generally, it is "'within the province of a lawyer to decide what witnesses to call, whether and how to conduct cross-examination, and other strategic and tactical decisions.'" *Sola-Morales v. State*, 300 Kan. 875, 887, 335 P.3d 1162 (2014) (quoting *Thompson v. State*, 293 Kan. 704, 716, 270 P.3d 1089 [2011]). Hence, a defendant bears the burden of showing that trial counsel's actions were not the product of strategy. 300 Kan. at 888.

As the State points out, Brooks raised only two claims of ineffective assistance of trial counsel in his K.S.A. 60-1507 motion: (1) trial counsel was ineffective by permitting Brooks to strike certain jurors; and (2) trial counsel failed to investigate and subpoena fellow inmates to testify on his behalf. On appeal, however, Brooks attempts to raise two additional claims of ineffective assistance of counsel that he did not argue before the district court. First, that trial counsel failed to obtain the guards' disciplinary reports Brooks requested; and second, that trial counsel did not inform him of his right to testify on his own behalf.

13

In regards to the additional claims, we will generally not consider an allegation of ineffective assistance of counsel raised for the first time on appeal. See *State v. Dull*, 298 Kan. 832, 839, 317 P.3d 104 (2014). Only under extraordinary circumstances will we consider a claim of ineffective assistance of counsel that was not asserted before the district court. One of these circumstances is where there are no factual issues presented and the test for ineffective assistance of counsel can be applied as a matter of law based upon the appellate record. See *Wimbley v. State*, 292 Kan. 796, 807, 275 P.3d 35 (2010).

We also note that Brooks fails to follow Supreme Court Rule 6.02(a)(5) (2015 Kan. Ct. R. Annot. 41), which requires an explanation of why the issues he raises for the first time on appeal are properly before us. In fact, the Kansas Supreme Court has recently emphasized that "Rule 6.02(a)(5) means what it says and is ignored at a litigant's own peril." *State v. Godfrey*, 301 Kan. 1041, 1043, 350 P.3d 1068 (2015); *State v. Williams*, 298 Kan. 1075, 1085, 319 P.3d 528 (2014). Nevertheless, even if we consider the two additional allegations of ineffective assistance of counsel asserted by Brooks, we find the record on appeal clearly refutes these claims.

Arguably, Brooks has also abandoned all his claims on appeal by failing to support them with relevant authority. Other than a cursory citation to the two-part *Strickland* test, Brooks does not cite any authority to support his specific claims of ineffective assistance of counsel. As a general rule, a point raised incidentally in a brief and not argued therein is deemed abandoned. See *Friedman v. Kansas State Bd. of Healing Arts*, 296 Kan. 636, 645, 294 P.3d 287 (2013). Failure to support a point with pertinent authority or show why it is sound despite a lack of supporting authority or in the face of contrary authority is akin to failing to brief the issue. *State v. Tague*, 296 Kan. 993, 1001, 298 P.3d 273 (2013).

14

*Trial Counsel's Performance During Jury Selection*

Brooks' argument in regards to Corrado's performance during voir dire has evolved throughout this case. In his K.S.A. 60-1507 motion, Brooks argued that Corrado did not effectively use her preemptory challenges and permitted the State to "stack the jury in [its] favor." In making his argument, he referenced five jurors who he believes Corrado should have struck. On appeal, Brooks shifts the focus of his argument away from statements made by specific jurors to Corrado's statements made during the evidentiary hearing on his K.S.A. 60-1507 motion, in which she explained that she always permits the defendant to strike a juror if he or she is adamant about doing so.

Initially, Brooks complains of one potential juror who stated that he could probably not make a fair and impartial decision if the defendant refused to testify. However, Corrado struck this juror with a preemptory challenge. In addition, Brooks points to a potential juror who stated that she would not believe a witness is telling the truth if he or she could not maintain eye contact. However, the State struck this juror with a preemptory challenge. Therefore, these contentions have no merit.

Next, the record does not support Brooks' complaints about the three remaining jurors. Brooks first contended in his K.S.A. 60-1507 motion that Corrado should have struck one juror who admitted that she did not like inmates. The record indicates the juror stated that in 1987—23 years before the trial—she worked for 6 months as a food service supervisor for a company that provided food services in HCF. The prosecutor then went on to question her as follows:

> "MS VOTH:  Okay. Is there anything about that experience that would make it hard for you to listen to the evidence as it's presented?

> "JUROR:  No. I, I didn't, I didn't care for it out there, but I gave it, you know, gave it my best shot and that was it, so.

"MS VOTH:  Okay. What about it did you not care for?

"JUROR:  Any of it.

"MS VOTH:  Okay. Like the people, the job?

"JUROR:  The people.

"MS VOTH:  Okay.

"JUROR:  All. Not just inmates, just the whole.

"MS VOTH:  In general?

"JUROR:  Staff in general, yeah.

"MS VOTH:  Okay. And even with your experience there, do you still think you would be able to be fair and impartial?

"JUROR:  Yes."

The juror stated that she did not care for all of the people she worked around—she did not suggest a particular prejudice against inmates, as Brooks claims.

Brooks also noted in his motion that a second juror admitted to being friends with a sergeant from the Reno County Sheriff's Department. However, that officer did not testify at Brooks' jury trial nor at his K.S.A. 60-1507 hearing, and the juror stated that she did not believe her friendship would affect her ability to be a juror. Lastly, Brooks points to a third juror who he believes "admitted to believing once a criminal always a criminal." The record does not support this contention. At one point during voir dire, Corrado asked,

16

"On a scale of one to ten, with one being once a criminal always a criminal, and ten, I don't care what he had done in his past, I'm going to set that aside and look at the evidence in this case . . . where do you think you would fall?"

The third juror ranked his opinion as a "five"—not a "one." Thus, we find that the record does not support Brooks' contention.

In regards to Brooks' claim on appeal, Brooks argues that Corrado ceded too much authority to Brooks by permitting him to strike certain jurors he absolutely did not want on the jury. Brooks stated in his K.S.A. 60-1507 motion that Corrado ignored her obligation to protect his right to a fair trial and permitted the State to stack the jury in its favor. However, it is an unfair characterization of her representation to suggest that Corrado permitted Brooks to conduct jury selection. At the hearing on Brooks' motion, Corrado testified that she gave Brooks a copy of the seating chart and a pen and asked him to take notes and tell her of jurors he wished to strike. She even produced the seating chart, which contained notes that Brooks had taken during voir dire.

Rather, the trial record indicates that Corrado conducted a meaningful voir dire. See *Bledsoe*, 283 Kan. at 103-04. She thoroughly questioned prospective jurors, testing their qualifications and competency. See *United States v. Bedonie*, 913 F.2d 782, 795 (10th Cir. 1990); *Deghand v. Wal-Mart Stores, Inc.*, 980 F. Supp. 1176, 1179 (D. Kan. 1997). If trial counsel conducts a thorough investigation, strategic choices made thereafter are "virtually unchallengeable." *Flynn v. State*, 281 Kan. 1154, 1157, 136 P.3d 909 (2006); see K.S.A. 22-3408(3) (providing: "The prosecuting attorney and the defendant or his attorney shall conduct the examination of prospective jurors."). Accordingly, we find that Corrado was not ineffective for including Brooks in the jury selection process.

17

*Trial Counsel's Decision to Not Call Certain Witnesses to Testify*

Brooks argues that Corrado failed to adequately search for inmates who might have been able to testify about the spitting altercation. Included in a trial counsel's responsibility to make strategic and tactical decisions is the duty to conduct a reasonable investigation. *Shumway v. State*, 48 Kan. App. 2d 490, 505, 293 P.3d 772, *rev. denied* 298 Kan. 1203 (2013) (citing *State v. Hedges*, 269 Kan. 895, 914, 8 P.3d 1259 [2000]). However, counsel may make a reasonable decision that makes particular investigations unnecessary. "'In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.'" *State v. Cheatham*, 296 Kan. 417, 437, 292 P.3d 318 (2013) (quoting *Strickland*, 466 U.S. at 690-91).

Here, Corrado testified that Brooks asked her to subpoena fellow inmates who may have been able to view the altercation but that Brooks was unable to provide her with any names. She further stated that she called the department of corrections but that they told her they did not have a record of who was located in those cells. Moreover, the video produced at trial was of such low quality that it was impossible to identify the other inmate who was housed in Brooks' cell. As such, it is hard to imagine what more Corrado could have done to locate potential witnesses. Thus, we find that Corrado met her duty to adequately investigate potential witnesses.

*Trial Counsel's Alleged Failure to Inform Brooks of His Right to Testify*

Brooks also contends that trial counsel failed to advise him of the right to testify on his own behalf. The record on appeal clearly refutes this claim. During the hearing on Brooks' K.S.A. 60-1507 motion—which was held nearly 4 years after trial—Corrado testified that she spoke with Brooks about testifying and that she was "pretty sure he chose not to." The trial transcript provides that after the State rested its case-in-chief, the

18

district court asked Brooks whether he had consulted with Corrado about testifying, and he responded, "From what's been told to me, we have discussed it, and at the point right now I just, I'm still kind of weighing out the options yea or nay . . . ." The district court then recessed for the evening so that Brooks could decide whether to testify. The district court conducted the following exchange with Brooks the next morning:

> "THE COURT: . . .
> "Last night when we adjourned the state had rested. Mr. Brooks wanted the evening to determine if in fact he was going to testify. Miss Corrado, have we come to a decision in that regard?
>
> "MS. CORRADO: Yes, he has, judge. Mr. Brooks has informed me that he chooses not to testify.
>
> "THE COURT: Mr. Brooks, would you please rise? We had a discussion about this yesterday afternoon when we adjourned, but for the record I want to verify that you yourself personally have made a decision to exercise your rights against self-incrimination and not to testify. Is that correct, sir?
>
> "THE DEFENDANT: Yes, sir, I have.
>
> "THE COURT: Okay. Thank you very much.
>
> "THE DEFENDANT: You're welcome."

Hence, we find no merit in this claim.

### Trial Counsel's Alleged Failure to Obtain Guards' Disciplinary Reports

Finally, Brooks asserts that his trial counsel was ineffective for failing to seek the guards' disciplinary reports. The record is not entirely clear on this point. Corrado stated during the evidentiary hearing that she was unable to recall whether she had requested the

19

guards' personnel files in this case but that she had previously requested personnel files in similar cases, if not this one. She testified that in her experience, the trial judge would view the files in camera and find no relevant information. See *State v. Deavers*, 252 Kan. 149, 157-58, 843 P.2d 695 (1992) (finding that district court properly quashed defendant's subpoena duces tecum for county sheriff's personnel and internal affairs files after the trial judge and the Kansas Supreme Court reviewed the files in camera and found nothing relevant to the defense).

Despite Corrado's foggy recollection—which is understandable considering the lapse of time between trial and the evidentiary hearing—Brooks has failed to indicate how the guards' personnel files would have been relevant to his defense. That is, assuming Corrado did not request the personnel files, he has not established how her failure to do so prejudiced him to the degree that he was denied a fair trial. See *Coones*, 301 Kan. at 70. There was overwhelming evidence at trial that Brooks threatened to kill two corrections officers as well as that Brooks spit on one of those officers.

Rather, Brooks' request seems more like a fishing expedition, which—considering that Brooks threatened to kill both guards—would have been improper. See *State v. Moore*, No. 103,451, 2011 WL 1878006, at *2 (Kan. App. 2011) (unpublished opinion) (finding that defendant failed to explain how new evidence would have been relevant at trial and concluding that his request was an improper fishing expedition). Consequently, we find that the record does not support Brooks' claim.

We, therefore, conclude that the district court's denial of Brooks' K.S.A. 60-1507 motion should be affirmed.

Affirmed.