No. 54,041

STATE OF KANSAS, *Appellee,* v. LUIZ DIAZ and VICTOR C. ALTEMAY, *Appellants.*

(654 P.2d 425)

Opinion filed December 3, 1982.

*Antonio L. Ortega,* of Blase, Blase & Ortega, of Wichita, was on the brief for appellant Diaz.

*Joseph Bribiesca,* of Wichita, argued the cause and was on the brief for appellant Altemay.

*Geary Gorup,* assistant district attorney, argued the cause; *Robert T. Stephan,* attorney general, *Clark V. Owens,* district attorney, and *Carl Wagner,* assistant district attorney, were on the brief for appellee.

The opinion of the court was delivered by

MILLER, J.: The defendants, Luiz Diaz and Victor C. Altemay, appeal from their convictions by jury trial in Sedgwick District Court of aggravated robbery, aggravated battery, and aggravated kidnapping, K.S.A. 21-3427, 21-3414, and 21-3421. They raise seven issues which we will discuss separately.

On April 18, 1981, Jerry Wells and Alfredo Chavez were conversing outside a liquor store located on the corner of Fourteenth and Broadway Streets in Wichita, Kansas. They were approached by a small group of men. These men began to speak to Chavez in Spanish. Wells left the group and walked toward his pickup truck which was parked in the liquor store lot. Wells saw one of the men in the group, defendant Victor Altemay, pull a knife on Chavez. The group then turned their attention to Wells. Chavez called to Wells: "They want to have you take them somewhere, but, don't do it. They are crazy." Chavez then ran into the liquor store.

The men forced Wells against his pickup and, while Altemay held a knife on Wells, defendant Luiz Diaz and others took his wallet, forty dollars, and a knife from his person. At one point during these proceedings, Diaz held a knife on Wells. Altemay forced Wells at knife point into the truck. Altemay climbed into the driver's seat; Diaz got in on the passenger side; Wells was in the middle. Altemay started the truck and drove away.

Altemay drove the truck around town for awhile, meanwhile holding the knife and occasionally poking Wells with it. Altemay stopped the truck, handed the knife to Diaz, and got out of the truck to relieve himself. Upon Altemay's return, Diaz took the opportunity to relieve himself, first returning the knife to Altemay. During this process, the key to the truck was lost. Altemay became upset, jabbed Wells in the stomach and stabbed him in

the back of his left shoulder. Altemay cut the ignition wires and tried to hot wire the truck but could not get it to run. Altemay then dragged Wells out of the truck and both defendants began to beat him. During this altercation, Wells was able to wrest the knife from Altemay; both defendants then fled the scene. Wells ran to St. Francis Hospital, carrying the knife with him.

Meanwhile, Chavez had persuaded the liquor store clerk to telephone the police. Officer Charles Loftis interviewed Chavez at the liquor store, and later interviewed Wells at the hospital. Wells turned the knife over to him. Officer Loftis recognized the descriptions of the robbers given to him by Chavez and Wells as the descriptions of Altemay and Diaz. The next day the officer went to a residence in Wichita where he found both defendants and took them into custody.

There were not enough men in custody who were similar in appearance to Altemay and Diaz to hold a proper lineup; therefore a photographic lineup was conducted. Chavez positively identified both Altemay and Diaz; Wells positively identified Altemay, and picked out the picture of Diaz as the other person in the truck, but said that he could not make a positive identification from the photograph. Both defendants were charged with the crimes of aggravated robbery, aggravated battery, and aggravated kidnapping. They were tried together and both were convicted of all three charges.

1. Defendants contend that the trial court erred in denying their motions for separate trials, and in support of this claim they contend that they had antagonistic defenses. The assertion of antagonistic defenses is one of the usual grounds for severance. See *State v. Ferguson, Washington & Tucker,* 228 Kan. 522, 524, 618 P.2d 1186 (1980). This claim of defendants, however, has little merit for the reason that the claims asserted were not antagonistic. Altemay asserted an alibi defense; Diaz simply denied any knowledge or involvement in the crime, without offering a specific alibi. Neither offered any evidence which would tend to inculpate or shift the blame to the other. The defendants' theory is that they were prejudiced because the jury's disbelief of one defense may have been transferred to the other. This is not the kind of antagonism which necessitates separate trials. No prejudice is shown, and it was not error to try these defendants together.

2. Defendants contend that the trial court erred in overruling their motions for judgment of acquittal. The rules for consideration of such motions were recently set forth in *State v. Tillery,* 227 Kan. 342, 345, 606 P.2d 1031 (1980), as follows:

"A trial judge in passing on a motion for judgment of acquittal must determine whether upon the evidence, giving full play to the right of the jury to determine credibility, weigh the evidence, and draw justifiable inferences of fact therefrom, a reasonable mind, or rational trier of facts, might fairly conclude guilt beyond a reasonable doubt. [Citation omitted.] When the sufficiency of evidence is questioned on appeal a similar standard is used. The appellate court must be convinced that when the evidence is viewed in the light most favorable to the prosecution, a rational factfinder could have found the defendant guilty beyond a reasonable doubt."

See also *State v. Myrick & Nelms,* 228 Kan. 406, 421, 616 P.2d 1066 (1980), and *State v. Gustin,* 212 Kan. 475, Syl. ¶ 3, 510 P.2d 1290 (1973). In support of this point, the defendants rely on minor inconsistencies in the evidence like the question of whether there were four or six men in the group which accosted Wells in the parking lot. This uncertainty appears to be based upon a misunderstanding by Chavez, whose English is limited. Apparently he confused the number of men in the party that approached him and Wells with the total number of men present, which totals six when Wells and Chavez are included. Defendants also complain about Wells' inability to make a positive identification of Diaz from the photographs. However, viewing the evidence in the light most favorable to the prosecution, we find that a rational factfinder could have found both defendants guilty beyond a reasonable doubt. Given the strength of the State's case, the trial court properly overruled the motions for judgment of acquittal.

3. Were the charges of aggravated kidnapping and aggravated battery multiplicitous? Defendants contend that they were, for the reason that aggravated battery is necessarily proved in proving the bodily harm requirement of aggravated kidnapping. We discussed multiplicity at length in *State v. Garnes,* 229 Kan. 368, 624 P.2d 448 (1981), and noted the general rule that there is no merger and thus no multiplicity if each offense charged requires proof of a fact not required in proving the other. As an example, we noted that an element of aggravated robbery is the taking of property from a person, an element not found in homicide. Homicide, though committed during the perpetration of aggra-

vated robbery, does not merge with the aggravated robbery; both charges may be maintained.

Here, the aggravated battery charged required proof that the accused intentionally applied force to the person of Jerry Wells, with intent to injure him, and that it was done with a deadly weapon, a knife. The offense of kidnapping, as charged, did not require proof of specific intent to injure, an essential element of aggravated battery. The offense of aggravated battery, as charged, did not require proof of the taking or confining of a person to facilitate flight or the commission of a crime, whereas such proof was essential to support the aggravated kidnapping charge. Although Wells sustained injury and bodily harm, an element of aggravated kidnapping, from the force applied during the battery, the offenses do not merge. This is similar to the ruling in *State v. Chears,* 231 Kan. 161, 643 P.2d 154 (1982), where we found that charges of aggravated kidnapping and aggravated sodomy did not merge, even though the sodomy supplied the bodily harm element required to prove aggravated kidnapping. We observed that one or more separate elements, not found in both of the crimes charged, were essential to prove each crime. We conclude that under the circumstances present here, the offenses of aggravated kidnapping and aggravated battery do not merge, and that there was no multiplicity.

4. Defendants contend that the testimony of Officer Loftis was prejudicial and requires reversal. During his direct testimony, the officer testified that he went to the apartment building in which the defendants were living because he "was aware that there were several Cuban families living at that apartment building and had made contact and had made a prior case concerning Victor and Luiz." There was an objection at that point by counsel for Diaz on the basis that the statement of the witness was irrelevant, immaterial, and improper. The trial court said: ". . . I think it's probably something we ought to hear outside the jury's presence if we are going to go into it." The prosecutor replied: "I didn't intend to, . . ." and promptly steered the witness away from that area. There was no further reference throughout this trial to the "prior case." Defense counsel did not ask that the remark be stricken or that the jury be instructed to disregard it. Under the circumstances, we conclude that the reference was not responsive to the prosecutor's question, was unintentional, and inadvertent.

The trial court's failure to strike the matter and admonish the jury to disregard it does not constitute reversible error. See *State v. Goodwin,* 223 Kan. 257, 259-260, 573 P.2d 999 (1977), and *State v. Mims,* 220 Kan. 726, 728-729, 556 P.2d 387 (1976).

The defendants also complain that Officer Loftis testified that he had had four personal contacts with the defendants previously, and that three of those four times Altemay and Diaz were together. There was no error in the testimony, and no prejudice. A police officer may have many contacts with persons other than those who have committed offenses. The contacts were of a relatively harmless nature, and defense counsel could have established that during cross-examination or otherwise, had they so desired. The officer's testimony was relevant to identification and showed the accuracy of the descriptions given by the victims. We find no error.

5. Defendants contend that the conduct of the trial judge amounted to advocacy for the prosecution, and thus deprived the defendants of a fair trial. The defendants' major complaints are that the trial judge objected *sua sponte* to questions framed by defense counsel, that he editorialized when ruling on objections, and that he made improper and prejudicial remarks before the jury.

Before discussing this issue further, it is important to set out some standards for examining claims of judicial misconduct. In *State v. Stoops,* 4 Kan. App. 2d 130, 603 P.2d 221 (1979), the Court of Appeals was faced with similar complaints about a trial judge. The court discussed the standards of judicial conduct and the rules of appellate review as follows:

"Standards of conduct for trial judges are set by the American Bar Association Standards for Criminal Justice. Although Kansas has no comparable code provisions, the ABA standard hereinafter set forth is in substantial conformity with Kansas practice and is a recognized and acceptable guide to proper conduct. ABA Standards for Criminal Justice, The Function of the Trial Judge § 6.4 (Approved Draft 1971), provides:

" 'The trial judge should be the exemplar of dignity and impartiality. He should exercise restraint over his conduct and utterances. He should suppress his personal predilections, and control his temper and emotions. He should not permit any person in the courtroom to embroil him in conflict, and he should otherwise avoid conduct on his part which tends to demean the proceedings or to undermine his authority in the courtroom. When it becomes necessary during the trial for him to comment upon the conduct of witnesses, spectators, counsel, or others, or upon the testimony, he should do so in a firm, dignified and restrained manner,

avoiding repartee, limiting his comments and rulings to what is reasonably required for the orderly progress of the trial, and refraining from unnecessary disparagement of persons or issues.'

"Allegations of judicial misconduct during trial must be decided on the particular facts and circumstances surrounding such alleged misconduct; and in order to warrant or require the granting of a new trial it must affirmatively appear that the conduct was of such a nature that it prejudiced the substantial rights of the complaining party. *State v. Thomson,* 188 Kan. 171, 174, 360 P.2d 871 (1961). In a more recent case, *Plains Transport of Kansas, Inc. v. Baldwin,* 217 Kan. 2, 10, 535 P.2d 865 (1975), the Kansas Supreme Court stated:

" 'We enter our caveat that no comment or remark should be made by a judge, during the trial of an action, which may tend to excite prejudice or hostility in the minds of the jurors toward one of the party-litigants, or sympathy for the other, but a mere possibility of prejudice from a remark of the judge is not sufficient to overturn a verdict or judgment, and, where a construction can properly and reasonably be given to a remark which will render it unobjectionable, it will not be regarded as prejudicial. (88 C.J.S., Trial, § 49, p. 124.)' " 4 Kan. App. 2d at 132.

To this we should add that the purpose of a trial in a criminal case is to ascertain the truth or falsehood of the charges against the accused, and that it is a part of the duty of the trial judge to see that the full truth is developed by the evidence. *State v. Norwood,* 217 Kan. 150, 152, 535 P.2d 996 (1975), and *State v. Jones,* 204 Kan. 719, 466 P.2d 283 (1970).

The conduct complained of must be examined with a view to determining whether it was of a nature to prejudice the substantial rights of the defendants. Diaz and Altemay first complain that the trial judge entered objections on his own, and made rulings which were favorable to the prosecution. At one point during the prosecution's direct examination of a witness the court overruled a defense objection to a question and suggested a rephrasing of the question to the prosecutor. This particular incident involved a question which was relevant but which was asked in an improper form. The trial court's suggestion was designed simply to expedite the matter since the question sought valuable information. The defendants do not show how they were prejudiced by this effort. See *State v. Norwood,* 217 Kan. 150.

The defendants also complain of three incidents where the court raised its own objections and made rulings. At one point the court admonished defense counsel to allow a witness to complete an answer before asking another question. This was simply an effort to protect the orderly conduct of the trial and to insure that all relevant information was before the jury. When the answer is responsive, the witness should be permitted to complete it. The

defendants also complain of the trial court's *sua sponte* demand that counsel lay a proper foundation before attempting to impeach one of the State's witnesses. The entire colloquy between court and counsel on this matter took place outside the hearing of the jury, thus preventing any prejudicial effect. In addition, this was also an effort on the part of the trial court to protect the proper progress of the trial. Later the court interposed an objection based on relevance and materiality, which the State echoed. This is again an attempt to expedite the trial; though it may have been improper, it is certainly not so prejudicial as to deprive the defendants of a fair trial.

Finally, the defendants complain of the following exchange during examination of Alfredo Chavez:

"Q. (By Mr. Leon) After Mr. Wells parked his truck—strike that. When did you see the six individuals that you testified to yesterday after you talked to Mr. Wells?

"INTERPRETER: He said he didn't say six were there already.

"THE COURT: My notes show that he didn't say six.

"MR. LEON: My notes show he said six people outside the liquor store.

"THE COURT: Well, then, fortunately, we have twelve members of the jury who heard this. I want you to know I have to make rulings on things, but as you remember, I told you the jury are the exclusive judges of the facts. The Court is made up of the Judge and the jury—the Judge is the determiner of what the law to be applied is, based on the law of Kansas, with the assistance of the lawyers. The jury are the exclusive judges of the facts, and nothing that happens in this trial by statements of others concerning, including the Judge, concerning what was testified to is meant to determine for the jury what the facts are.

"No one may infringe upon that exclusive prerogative and responsibility of the jury. Okay. Thank you. Let's proceed."

The confusion over the number of people Mr. Chavez testified about was apparently caused by language barriers. The judge's statement was directed at clarification. His further statement makes it clear to the jurors that they are the exclusive judges of the facts. In addition, the court gave the usual written instruction warning the jury against considering any remarks of the judge or any rulings on objections, in reaching its conclusion.

This was a difficult trial for court and counsel; it was complicated by the fact that much of the examination of witnesses had to be conducted through an interpreter, and the entire trial had to be translated into Spanish for the defendants. Examining the record of the specific incidents of which defendants complain, and

examining the record as a whole, we conclude that the trial court's conduct did not approach that which constitutes judicial misconduct. The defendants have failed to show prejudicial error, and we find none.

6. Did the trial court err in admitting into evidence nine exhibits—the knife used in stabbing the victim, two photographs of the pickup truck, and six photographs of the victim's various wounds? We think not. As to the knife, defendants contend that it was not relevant, and they also contend that it was not properly connected to the defendants because the officer who originally obtained the knife from Wells did not testify. There is no contention that the knife was altered; also, it was positively identified by the victim as the knife used in the stabbing. Ordinarily, when objects of physical evidence have been kept in police custody, the chain of possession must be reasonably complete; but this rule may be relaxed when the object is positively identified at the trial, and it is established that the object remains unaltered. *State v. Treadwell,* 223 Kan. 577, 580, 575 P.2d 550 (1978). Under the circumstances, further proof of the chain of custody was not required. As to relevance, the defendants were accused of stabbing Wells with a knife; Wells positively identified the knife received in evidence as the one defendants used to stab him. It was an instrumentality of the crime. The claim that the knife was not relevant is without merit. See *State v. Nicholson,* 225 Kan. 418, 419-420, 590 P.2d 1069 (1979).

The photographs of the truck corroborated the testimony of the victim and Chavez, and were identified as true and accurate representations of what they were intended to depict. Defendants contend that these photographs were inadmissible because the person who took the photographs did not testify. As we have often held, still photographs or motion pictures, if shown to be an accurate likeness of what they purport to represent, are admissible in evidence as aids to the trier of fact in arriving at an understanding of the evidence. This is a matter committed to the trial court's discretion. See *State v. Costa,* 228 Kan. 308, 318, 613 P.2d 1359 (1980), and cases cited. It is accuracy in depicting what a proffered photograph purports to show, rather than the technical precision of the photographer, which is critical. Photographs may well be identified as being true and accurate representations of the scene by witnesses who did not take them, but who are

familiar with the scene or objects shown. Such identification is adequate and appropriate.

Defendants claim that the photographs of the victim's wounds were objectionable because the photographer was not called to testify, and because they were inflammatory. What we have said above disposes of the first argument; there was no need to call the photographer. The photographs were identified as accurately portraying the wounds the victim sustained. We have examined the small (3 ½″ x 4 ½″) photographs of the victim's neck and torso, and do not find them gruesome or inflammatory. They depict the wounds that the victim received, and corroborate his testimony. The trial court did not err in admitting them.

7. Finally, defendant Altemay contends that the trial court committed reversible error in failing to give an eyewitness instruction along the lines discussed in *State v. Warren,* 230 Kan. 385, 635 P.2d 1236 (1981). The State counters this argument by pointing out that this case was tried before the *Warren* decision was announced, and it contends that *Warren* should not be given retroactive application. We need not decide the question of retroactivity, however, for the reason that the trial court's failure to give a *Warren*-type instruction was not error, for two reasons. First, the instruction was not requested, and K.S.A. 22-3414(3) provides in substance that no party may assign as error the failure to give an instruction unless the matter was properly presented to the trial court. Second, an instruction on eyewitness identification testimony is not required under *Warren* unless there is a serious question about the reliability of the identification. Chavez knew Altemay, had met him before the occurrence here, and both Chavez and the victim made positive in-court identifications of both Altemay and Diaz. Both had ample opportunities to view the defendants. The indicia of reliability far surpasses that of the situation presented in *Warren,* and is so high that it was not error to fail to give the now-suggested instruction. See *State v. Brown,* 230 Kan. 499, 638 P.2d 912 (1982), and *State v. Moore,* 230 Kan. 495, 639 P.2d 458 (1982).

The judgment is affirmed.