No. 67,429

STATE OF KANSAS, *Appellee,* v. DAVID G. THOMAS, *Appellant.*
(847 P.2d 1219)

Opinion filed March 5, 1993.

*Benjamin C. Wood,* special assistant appellate defender, argued the cause, and *Jessica R. Kunen,* chief appellate defender, was with him on the brief for appellant.

*Debra S. Byrd,* assistant district attorney, argued the cause, and *Nola Foulston,* district attorney, and *Robert T. Stephan,* attorney general, were with her on the brief for appellee.

The opinion of the court was delivered by

SIX, J.: This case is about jury instructions, evidentiary rulings, the identity of a confidential informant, and the manner in which a first-degree murder trial was conducted by the trial judge. David G. Thomas was convicted under K.S.A. 1992 Supp. 21-3401. He contends he is entitled to a new trial because the trial judge: (1) was partial and unfair; (2) did not permit him to present his defense; (3) improperly instructed the jury on first-degree murder; (4) failed to instruct on accomplice or on lesser included offenses; (5) admitted evidence of Thomas and his girlfriend threatening witnesses and of a previous conviction of Thomas' girlfriend; and (6) did not require the State to disclose the identity of a confidential informant.

Our jurisdiction is under K.S.A. 1992 Supp. 22-3601(b)(1) (based on Thomas' conviction of a class A felony or on his maximum sentence of life imprisonment).

We find no reversible error and affirm.

## Facts

Thomas borrowed a .22 rifle from Joy and Stan Austin in March 1991, indicating that he wanted to go hunting. The next evening, two brothers of his longtime girlfriend, Duchess Couser, were with Thomas when he drove to Wichita's north side looking for rock cocaine.

Thomas previously had told Eddie Wynn, one of Duchess' brothers, and others that someone "had ganked him" (sold bad cocaine or drugs). Thomas pulled into a driveway next to a recreation center and asked a man standing nearby if he had any cocaine. The man replied that he did. Thomas got out of the car, reached into the back seat, and pulled out a gun. Earl testified that Thomas aimed the gun at the man, who was standing nearby. The man started to run to the back of a building and was pursued by Thomas. Eddie heard two shots, Earl heard three. At trial, neither Eddie nor Earl were able to describe the man they had seen that evening. When Thomas returned to the car he showed Eddie some crack rocks and said, "I got this." Earl asked Thomas if he "shot the guy." Thomas replied, "Pussy ass nigger sold me some bad drugs."

The trio drove to the Austins' house, where Thomas wiped with alcohol and towel-dried the .22 rifle. Joy Austin testified Thomas said he wiped off the gun because "he didn't want anybody to do something with it and blame him because his fingerprints were on it." Earl testified that Thomas again, when asked about the cocaine rocks, said he got them "off the guy he shot." The body of Veotis Richmond, who was known to sell drugs, was found the next morning. Richmond died from a single gunshot to the head. The bullet was retrieved during an autopsy. The pathologist testified that the shot had been fired from some distance. Richmond also had sustained several injuries to his face, which the pathologist speculated were caused by foot stomping. According to the pathologist, the marks and abrasions on Richmond's neck and knees and the lacerations on his fingers could

have been due either to an offensive or defensive injury. A fire-arms examiner testified that the bullet removed from Richmond's head came from the gun Thomas had borrowed from the Austins. Richmond's death was reported on the five o'clock evening news. After seeing the news report, Earl asked Thomas, "Do you know you killed him?" Earl testified that Thomas replied, "It's just another nigger dead."

The month after Richmond's death, Duchess called Earl to the phone. Thomas was on the line. Earl testified that Thomas "just said, you know, 'Why did you have to say it on me,' you know, just he said, you know, 'I could have had my family come down here and just' pow pow, you know, just like that." Earl stated that he understood Thomas' words to be a threat to kill him "[f]or telling on him." During the homicide investigation, a confidential informant (CI) spoke to Officer Terry Fettke. According to Fettke, the CI indicated that he or she had heard two women (Tracy Jackson and Evelyn Robinson) discussing an incident where a black male, known as "Roger," had made threatening comments about someone named Veotis who had sold Roger bad drugs. Thomas filed a motion to disclose the identity of the CI. The motion was denied.

### A Fair and Impartial Judge

According to Thomas, the trial judge "repeatedly injected himself into the trial," and, thus, Thomas' case was prejudiced. Specifically, Thomas complains that the trial judge discounted defense evidence, belittled defense counsel, impeached witnesses, argued with defense counsel, applied the rules of "reality of evidence," gave speech after speech on evidentiary theories in front of the jury, curtailed and interfered with defense cross-examinations, denied the defense the right to put on evidence, and so saturated the trial with interference corrosive to Thomas' right to fairness that the very fabric of the trial fell apart. Thomas emphasizes that he is entitled to a trial before a fair and impartial judge. He relies on *State v. Hamilton*, 240 Kan. 539, 731 P.2d 863 (1987), in which a conviction was reversed for judicial misconduct.

The State insists that Thomas' contentions are based upon his slanted characterization of the trial. The State emphasizes that Thomas bears the "burden to prove error in the judge's conduct.

*State v. Stoops*, 4 Kan. App. 2d 130, 132, 603 P.2d 221 (1979)." We agree. According to the State, (1) appellate counsel has gone to extraordinary lengths to distort the record in an attempt to argue Thomas was denied a trial before a fair and impartial judge, (2) Thomas' claims are simply not supported by the record, (3) the trial court made every effort to ascertain the truth of the charges against Thomas and to insure that the trial was properly conducted, and (4) the jury was specifically instructed that nothing the court did was meant to influence the verdict. ·

We have examined the record of the specific incidents complained of by Thomas. The complaints are similar to those asserted by the defendants in *State v. Diaz & Altemay*, 232 Kan. 307, 654 P.2d 425 (1982), which involved the same trial judge. We recently reaffirmed the *Diaz & Altemay* approach to the issue of judicial misconduct. *State v. Nguyen*, 251 Kan. 69, 79-80, 833 P.2d 937 (1992).

Thomas contends the trial court spontaneously interrupted his counsel's cross-examination of Eddie in a manner which was implicity critical of counsel.

*Example*:

"Q. [Defense counsel] I'm asking you. When you testified earlier, as I understood your testimony, show me which alley—you can use this as a pointer. Show me which alley you were indicating the vehicle you were riding in went in.

"THE COURT: Are you saying he said an alley?

"Q. [Defense counsel] Or driveway. Show me where the vehicle went."

*Example*:

"Q. [Defense counsel] So, to answer my question, you're fairly certain that this is the driveway you entered into and not any of these other two driveways?

"A. Yes.

"THE COURT: For the sake of the record, in case someone ever reviews it, would you mind specifying some spot, location, direction or landmark somewhere on the diagram about which questions have been asked?

"[Defense counsel]: Yes, your Honor. Point well taken."

*Example*:

"Q. [Defense counsel] How certain are you of your testimony?

"THE COURT: Counselor, at what time are you asking about right now? Leaving his house? Leaving the other person's house? Leaving the liquor

store or leaving the residence which he testified about? I just—I [sic] trying to remove ambiguities, that's all.

"Q. [Defense counsel] Mr. Wynn, as Mr. Thomas, yourself, and Earl Couser are leaving your residence, getting ready to leave and go to the liquor store, was any mention ever made by Mr. Thomas that he was upset over being cheated on a drug transaction?"

*Example*:

"Q. [Defense counsel] Now, previously, you've testified that you rode around approximately 40 minutes after you left the liquor store; is that what you're telling us today?

"THE COURT: Well, counselor, I'm sorry, but are you referring to some other occasion? Or are you talking about earlier this afternoon?

"[Defense counsel]: Well, actually, I'm talking about his previous testimony at preliminary hearing.

"THE COURT: Well, then you're going to have to lay a foundation and ask it if a certain question was asked and a certain answer was given."

*Example*:

"Q. [Defense counsel] . . . Would you read aloud the lines I have marked in yellow, starting at line two and concluding with line 21?

"THE COURT: You may ask him to read it to himself, and ask him if he were asked those questions and gave those answers, but that's the way you'll have to proceed.

"[Defense counsel]: Okay. Thank you, Your Honor."

*Example*:

"Q. [Defense counsel) Now, Mr. Wynn, having reread your preliminary hearing testimony, at preliminary hearing you testified that—

"THE COURT: No, wrong.

"Q. [Defense counsel] Mr. Wynn, having reread your preliminary hearing testimony, does that refresh your recollection as to whether or not anything in addition to a six pack of beer was purchased at the liquor store?"

Thomas complains of the trial judge's comment at the time the gun was introduced.

*Example*:

"Q. [The State] Mr. Wynn, I'm showing you—

"THE COURT: Just a moment. Check that. (A sheriff's officer examined the exhibit.)

"THE COURT: Please. I didn't mean to order you about.

"[The State]: It's been checked.

"THE COURT: Well, Ms. Fitch, we don't take anybody's word for anything, we check it every single time. We don't point guns at people we don't intend to shoot, ever.

"[The State]: Good point, Your Honor.

"Q. Mr. Wynn, I'm showing you what's been marked as State's Exhibit No. 1. Have you ever seen this before?

"[Defense counsel]: Let me object, Your Honor. This is not part of my cross examination. This exhibit was not presented during direct. If I have to limit myself to the scope of direct, I think—

"THE COURT: Counsel, you went into great detail or some detail about the use of the gun. This is redirect on your cross.

"[Defense counsel]: Thank you, Your Honor."

Thomas asserts that the trial judge expressed panic in front of the jury about Thomas not being present.

*Example*:

"[Defense counsel]: I understand, Your Honor. I wanted to clean up this from prior to lunch.

"THE COURT: I don't want to—

"[The State]: Your client's not here.

"THE COURT: We have a real time problem here now, so if you're going to call this particular witness, please call him now.

"[Defense counsel]: Judge, do you want me to proceed?

"THE COURT: Oh, God, where's the defendant? We seem to have lost track of the defendant. Have you looked at those instructions, ma'am?

"[The State]: Somewhat, yes, Your Honor.

"THE COURT: I could change the elements instruction if the lawyers want it changed, but—

(The defendant entered the courtroom.)"

Thomas complains of numerous additional instances of a similar nature. Thomas argues that the right to a fair trial is fundamental, so the usual "harmless error" standard of review does not apply. The purpose of trial is to ascertain the truth or falsehood of the charges against Thomas. It is a part of the duty of the trial judge to see that the full truth is developed by the evidence. *Diaz & Altemay*, 232 Kan. at 313. Allegations of judicial misconduct during trial must be decided on the particular facts and circumstances surrounding the alleged misconduct. The conduct complained of must be examined and a determination made as to whether it was prejudicial to substantial rights. Where a construction can properly and reasonably be given a remark which will render it unobjectionable, the remark will not be regarded as prejudicial. *Diaz & Altemay*, 232 Kan. at 313.

Thomas has failed to show that the trial court's conduct constituted prejudicial error.

### The Right to Present a Defense

Thomas relies on *Chambers v. Mississippi*, 410 U.S. 284, 303, 35 L. Ed. 2d 297, 93 S. Ct. 1038 (1973), which held Chambers was denied a fair trial by evidentiary rulings which disallowed testimony that a third party had confessed. Thomas applies the *Chambers* criteria to the facts in the case at bar, *i.e.*, the trial court's failure to admit Officer Fettke's testimony for the truth of the matter regarding the CI. Thomas concludes that the *Chambers* factors were met; consequently, Thomas should have been allowed to present statements made by a man named "Roger" that a different person committed the crime. *Chambers* identified four factors which provided "persuasive assurances of trustworthiness," so as to require admission. First, each of the declarant's confessions was made spontaneously to a close acquaintance soon after the murder took place. Second, each confession was corroborated by some other evidence. Third, each confession was clearly self-incriminating and against the declarant's interest. Finally, the declarant was available for cross-examination if any question arose concerning the truthfulness of his out-of-court statements. *Chambers*, 410 U.S. at 300-01.

Thomas explains that in *State v. Jackson*, 244 Kan. 621, 772 P.2d 747 (1989), we indicated that a trial court should allow defense counsel to show that another party committed an offense in the situation where there is a declaration against interest on the part of the involved third party. The State counters by discussing the relevant testimony at the pretrial hearing in the case at bar. According to the State, Tracy Jackson testified that she was with Roger on March 26, and she never told anyone she took Roger to 9th Street (the area where the murder occurred) the day of the crime. She did, however, take him to 9th Street the previous day, but Roger did not threaten to kill Richmond. Furthermore, Evelyn Robinson testified that on March 26 she was not present when Roger was allegedly dropped off at 9th Street and she did not hear him make any threats against Richmond. The State highlights the fact that at trial, neither side called Tracy, Evelyn, or Roger as witnesses even though Tracy and Evelyn were present at trial and Roger was available in the Sedgwick County jail. The State explains that although the trial

court would not admit the evidence to prove the truth of the matter asserted, the court did allow Fettke to testify regarding the fact that the statement was made by the CI.

The State asserts that Thomas' application of *Chambers* to the case at bar is flawed for a variety of reasons. *First,* there is no positive evidence that Roger made the statements. Furthermore, unlike the confessions at issue in *Chambers,* the statements attributed to Roger did not possess the "considerable assurance of their reliability" that impressed the *Chambers* court. 410 U.S. at 300. The State argues that the statement attributed to Roger did not constitute a confession to the crime Thomas was charged with. (If the CI was believed, Roger at most told the two women that he was going to "get" someone.) *Second,* there was no corroborative evidence that Roger murdered Richmond. There was no evidence that Roger was in possession of a rifle, let alone the rifle used to kill Richmond. Furthermore, if Thomas seeks to prove the murder was committed by someone who had a fight with Richmond, there is no evidence that Roger and Richmond were in a fight. Testimony that Roger was present in the area the day before the murder, contrary to Thomas' assertion, provides no corroboration for the statements he allegedly made to the two women. *Third,* Roger's statement that he was going to get someone was not "unquestionably" against his interest as was the third-party confession in *Chambers*. *Finally,* unlike *Chambers,* Thomas did not produce Roger at trial. In addition, he did not call either of the two women.

Thomas' reliance on *Chambers* does not persuade us to conclude that the trial court erred in refusing to admit Fettke's testimony for the truth of the matter asserted. The facts in *Thomas* do not meet the *Chambers* criteria.

Thomas argues in the alternative that Roger's statements to the CI should have been admitted based upon the hearsay exception, K.S.A. 1992 Supp. 60-460(j), declarations against interest. The standard of review on exclusion under 60-460 is abuse of judicial discretion. *State v. Quick,* 226 Kan. 308, 317, 597 P.2d 1108 (1979). K.S.A. 1992 Supp. 60-460(j), like *Chambers,* rests on the assumption that hearsay statements which rise to a level of reliability and trustworthiness may properly be admitted. The facts in the case at bar do not demonstrate such reliability.

Thomas, in framing his "right to present a defense" claim, asserts that he has been denied his right to due process, to a fair trial, and to compulsory process. Thomas does not present an independent analysis for these four claims. The due process and fair trial arguments are aspects of the right to present a defense. Thomas is correct when he advances the premise that he has a right to present a defense. See *State v. Irons,* 250 Kan. 302, 309, 827 P.2d 722 (1992). However, this right is subject to statutory rules and case law interpretation of rules of evidence and procedure. For example, as the State points out, we have repeatedly held that a trial court can exclude, as irrelevant, circumstantial evidence that someone other than the defendant committed the crime in situations where the State's case is built on direct evidence. *Jackson,* 244 Kan. at 625. In the case at bar, the State's case was based on direct evidence.

Thomas also asserts that the trial court erred in refusing to admit Eva McDonald's testimony. However, Thomas does not indicate what her testimony would have been. The State informs us that Eva would have testified that Richmond was acting overbearing and combative prior to his death. We find no error in the exclusion of Eva's testimony.

The trial court did not err in limiting Officer Fettke's testimony.

### Jury Instructions—First-Degree Murder

The trial court instructed the jury on first-degree murder as follows:

"Defendant is charged with the crime of Murder in the First Degree. Defendant pleads not guilty. To establish this charge each of the following claims must be proved. Defendant killed a human being, Veotis E. Richmond, in Sedgwick County, Kansas, between March 26 to March 27, 1991:
A. Committed in the perpetration of or attempt to perpetrate a felony, or
B. Committed:
    1. maliciously,
    2. willfully,
    3. deliberately, and
    4. with premeditation.
Felony Murder Rule: If the death of a human ensues in the perpetration or attempt to perpetrate a felony dangerous to human life, then Murder in the First Degree is committed even though the death of a human being is not intended.

"Aggravated Robbery and Robbery, and attempt to commit same, are felonies dangerous to human life."

Thomas objected to this instruction as being confusing and not in conformity with the Pattern Instructions for Kansas (PIK). Thomas' counsel stated that the felony-murder instruction should not be included with the premeditated murder instruction.

Thomas observes that the instruction did not specify the felony that the jury needed to determine had been committed in order to satisfy the felony-murder elements. Thomas' counsel made a general objection to the trial court's failure to follow PIK. However, he did not assert that the failure to specify the felony was error. Thomas declares that "[t]o one unschooled in the law, the killing itself could be considered a felony." Thomas emphasizes that PIK requires the relevant element to be instructed on as follows: "2. That such killing was done while (in the commission of) (attempting to commit) [the felony is to be specified here], a felony." PIK Crim. 2d 56.02 (1992 Supp.). The trial court defined aggravated robbery, robbery, and attempt.

" 'Aggravated Robbery' is a robbery committed by a person who is armed with a dangerous weapon or who inflicts bodily harm upon any person in the course of such robbery.

" 'Robbery' is the taking of property from the person or presence of another by threat of bodily harm to that person or another person or by force.

"An 'attempt' is any overt act toward the perpetration of a crime done by a person who intends to commit such crime but fails in the perpetration thereof or is prevented or intercepted in executing such crime.

"It shall not be a defense to a charge of attempt that the circumstances under which the act was performed or the means employed or the act itself were such that the commission of the crime was not possible."

According to Thomas, these instructions failed to limit the jury to a consideration of specific felonies. Thomas also alleges that the last paragraph of the instruction was confusing and unnecessary.

Thomas argues that the most significant flaw in the murder instruction was the failure to include all of the essential elements of the offenses of robbery and aggravated robbery. The instructions for robbery and aggravated robbery omitted the element of intent. Thomas reasons that in *State v. Clingerman,* 213 Kan. 525, 516 P.2d 1022 (1973), we granted a new trial based upon the failure of the trial court to include one of the necessary elements of robbery in its elements instruction on felonious in-

tent. Thomas states that his counsel objected to the elements instruction and that he "need not show that the error was clear, only that it existed." However, Thomas does not provide a citation to the record. We find no specific objection to the robbery and aggravated robbery instructions.

Thomas contends that in a felony-murder case: (1) Where there can be a reasonable doubt as to what underlying felony a defendant might be guilty of, a trial court must instruct on each of those felonies; (2) where certain of those felonies are not inherently dangerous, the jury must be so informed; and (3) the jury must be informed that it cannot convict on felony murder if it finds that the underlying felony was not inherently dangerous.

Thomas indicates that he was not separately charged with aggravated robbery and robbery and that there was no direct evidence of exactly what happened. Thomas advances a hypothetical scenario in support of his claim that the evidence could have easily justified an instruction on possession of cocaine or on theft as a lesser crime of robbery. Thomas concludes that just as there was evidence to support the instruction upon aggravated robbery and robbery as inherently dangerous underlying felonies, there was arguably evidence to support the instruction upon the not inherently dangerous felonies of possession of cocaine and theft. According to Thomas, it was clear error to select only the inherently dangerous felonies for inclusion as underlying felonies.

The State responds by explaining that it is well established that "instructions are to be considered together and read as a whole, without isolating any one instruction. [Citation omitted.] If the instructions properly and fairly state the law as applied to the facts in the case, and if the jury could not reasonably have been misled by them, then the instructions do not constitute reversible error although they may be in some small way erroneous." *State v. Morris,* 244 Kan. 22, 23, 765 P.2d 1120 (1988).

According to the State, sections A and B of the instruction on first-degree murder were patterned after K.S.A. 1990 Supp. 21-3401(a) and (b). The State also believes that when all of the instructions are read together it is clear that robbery, aggravated robbery, or the attempt to commit those crimes were the pertinent felonies. The State next insists that the last paragraph following the attempt instruction properly mirrors the law in

K.S.A. 1992 Supp. 21-3301(b) and, therefore, should not serve as a basis for setting the conviction aside.

The State explains that the proper standard of review on the omission of the element of intent is stated in *State v. Redford,* 242 Kan. 658, Syl. ¶ 4, 750 P.2d 1013 (1988): "When a trial court errs in omitting from its instruction an element of the crime charged, the omission is reversible error *if* the appellate court is firmly convinced there is a real possibility the jury would have returned a different verdict had the error not be made."

The State addresses Thomas' theft and possession of cocaine claims by contending that there was evidence produced at trial about what happened. Thomas told Eddie he shot the victim in the legs, the victim fell to the ground, and Thomas took the cocaine from him. The only contradictory evidence was that the victim was shot in the head, not the legs. The State asserts that there was no evidence that the taking of cocaine was anything but intentional. We agree. Thomas' argument does not provide a basis for setting aside his conviction.

The standard of review applied to jury instruction error requires an objection before the jury retires, stating distinctly the matter objected to and the grounds for the objection, unless the instruction or the failure to give the instruction is clearly erroneous. K.S.A. 22-3414(3). *State v. Crabtree,* 248 Kan. 33, 39, 805 P.2d 1 (1991).

Thomas asserted specific errors when he objected to the first-degree murder instruction. However, he failed to object to the lack of the intent element. A general objection to the failure to use PIK should not mean that counsel also objected to the failure to specify the underlying felony. We apply the clear error standard of *Crabtree* to Thomas' argument concerning the absence of the intent element. Counsel should have specified this alleged error. Otherwise, trial counsel would be able to generally object to the failure to use a PIK instruction and new arguments advancing specific objections arising from an analysis of PIK notes and comments could be used by appellate counsel for the first time on appeal.

With respect to the failure to include the intent element in the aggravated robbery and robbery instructions, *State v. Lucas,* 221 Kan. 88, 557 P.2d 1296 (1976), controls the case at bar. In

*Lucas,* clear proof of intent was established by defendant's use of a deadly weapon. Intent was never made an issue in *Lucas.* Lucas failed to lodge an objection to the instructions given. We held it was not reversible error to fail to instruct on intent. 221 Kan. at 90-91. We observed in *Lucas* that it would be better practice to include the element of intent as suggested in PIK Crim. 2d 56.30, 56.31 (1975 Supp.). 221 Kan. at 91. Thomas, like Lucas, used a deadly weapon. Thomas failed to specifically object to the absence of the intent element in the instruction. Jury instructions are to be considered together and read as a whole without isolating any one instruction. *Crabtree,* 248 Kan. at 39. The trial court did give an instruction on the State's burden to prove the required criminal intent.

We analyzed a jury instruction challenge in *State v. Morris,* 244 Kan. at 23, and reasoned that if the instructions properly and fairly state the law as applied to the facts in the case and if the jury could not reasonably have been misled by them, then the instructions do not constitute reversible error although they may be, in some small way, erroneous. We have previously addressed the merits of using PIK instructions. *State v. Macomber,* 244 Kan. 396, Syl. ¶ 5, 769 P.2d 621 (1989). In *Macomber,* we concluded that the failure to give the PIK instruction did not prejudice the defendant's substantial rights. 244 Kan. at 406. Combining the premeditated murder and felony-murder instructions in the case at bar did not prejudice Thomas' substantial rights. The felonies of robbery, aggravated robbery, and attempt of same were the focus of the total set of jury instructions. The evidence did not support the hypothetical facts regarding the possession of cocaine and theft advanced by Thomas' appellate counsel.

We find no prejudical error in the instructions on premeditated murder and felony murder.

### Lesser Included Offenses

Thomas objected to the trial court's failure to give second-degree murder and voluntary manslaughter instructions. According to Thomas, the evidence indicated that the firing of the rifle could have resulted from anger arising from a fight with Richmond.

The State contends Thomas was either guilty of first-degree murder or he was not guilty. We agree. His defense at trial was that someone else committed the crime. Lesser included offense instructions are not required in felony-murder cases unless the evidence of the underlying felony is weak or inconclusive. *State v. Bailey,* 247 Kan. 330, 338-39, 799 P.2d 977 (1990), *cert. denied* 114 L. Ed. 2d 108 (1991). We recently discussed the rules regarding lesser included instructions in *State v. Deavers,* 252 Kan. 149, 843 P.2d 695 (1992), a premeditated murder case. Instructions on lesser included offenses must be given even though the evidence is weak and inconclusive and consists solely of the testimony of the defendant. An instruction on a lesser included offense is not required, however, if the evidence at trial excludes a theory of guilt on the lesser offense.

In the case at bar, the evidence indicated that Richmond's murder was committed in the course of an aggravated robbery. Therefore, under the *Bailey* and *Deavers* analyses, lesser included offense instructions were not required.

The evidence does not support Thomas' theories regarding second-degree murder and voluntary manslaughter. In *Deavers,* we noted that "[s]talking someone, firing a shot, pausing, and shooting again is evidence of premeditation." 252 Kan. at 153. A similar scenario, in the case at bar, was described by both Eddie and Earl. Thomas went to the north side in Wichita with the intent to locate Richmond. He borrowed a rifle, got out of the car with the rifle, and shot Richmond. The facts support a finding of premeditation.

### An Accomplice Instruction

Thomas asserts that an accomplice instruction is proper in all circumstances where an accomplice testifies, citing *State v. Anthony,* 242 Kan. 493, 501, 749 P.2d 37 (1988). Thomas argues that the testimony of Eddie and Earl is suspect because both men went with Thomas to Wichita's north side. Thomas believes that both men "could be deemed aiders and abettors" because there "was some evidence that Earl and Eddie were enlisted with knowledge that their mission was to seek out the seller of bad drugs."

The State reminds us that Thomas did not request an instruction on accomplice testimony. The standard of review is limited to determining whether the failure to give the instruction was clearly erroneous. K.S.A. 60-251(b). The evidence suggested the trip to the north side was either unexpected or a detour taken because Thomas had been sold bad drugs. Thomas is not entitled to an accomplice instruction. See *State v. Young,* 14 Kan. App. 2d 21, 37, 784 P.2d 366, *rev. denied* 245 Kan. 788 (1989). Thomas has not demonstrated clear error. He was not prejudiced by the trial court's failure to give an accomplice instruction.

### Evidence of Threats and of A Previous Conviction
### For Aggravated Intimidation of A Witness

Thomas insists that the admission of testimony regarding threats that he had allegedly made against Eddie if Eddie testified was prejudicial error. The threat testimony was objected to at trial on the grounds of relevance. Thomas also asserts that the State should not have been allowed to introduce Duchess Couser's previous conviction for aggravated intimidation of witnesses. Thomas believes that evidence of Duchess' alleged threats to witnesses regarding his case, including threats allegedly made in chambers, was improperly admitted.

The State claims the evidence was relevant. Relevant evidence is statutorily defined as "evidence having any tendency in reason to prove any material fact." K.S.A. 60-401(b). Relevancy is more a matter of logic than law. Evidence is relevant if it renders the desired inference more probable than it would be without the evidence. *State v. Faulkner,* 220 Kan. 153, Syl. ¶ 6, 551 P.2d 1247 (1976). The State identifies the rule that the admission of evidence rests within the sound discretion of the trial court, subject to exclusionary rules. *State v. Carmichael,* 240 Kan. 149, 157, 727 P.2d 918 (1986). In *State v. Wilson,* 108 Kan. 433, 435, 195 Pac. 618 (1921), we reasoned that "attempts by the accused to conceal or destroy evidence, or to fabricate or procure false evidence, are incriminating circumstances that may be presented to the jury." See *State v. Williams,* 196 Kan. 628, 633, 413 P.2d 1006 (1966). The evidence of Thomas' threat to Eddie was properly admitted.

The State concludes that, based on Thomas' own threats and on his long-term relationship with and control over Duchess, there was a connection between Thomas and threats made by Duchess. Consequently, the State claims that discretion was not abused in admitting evidence of Duchess' threats. Furthermore, the State contends that when Duchess denied making any such threats, her conviction for aggravated intimidation of a witness was properly admitted to rebut her denials. The State reasons, however, that if error occurred in the admission of either Duchess' threats or her conviction, it was harmless. We agree.

The erroneous admission of evidence in a criminal trial does not require a reversal of conviction in every case, but only where it is of such a nature as to affect the outcome of the trial and deny substantial justice. *State v. Walker*, 239 Kan. 635, 644, 722 P.2d 556 (1986). We need not decide whether admission of the questioned testimony was error because Thomas has not shown that the admission might have affected the outcome of the trial and denied substantial justice. See *Walker*, 239 Kan. at 644.

### The Identity of A Confidential Informant

Our standard of review on the trial court's failure to disclose the identity of a confidential informant is abuse of discretion. *State v. Pink*, 236 Kan. 715, Syl. ¶ 2, 696 P.2d 358 (1985).

Thomas insists that the CI had material, exculpatory information for the defense. Thomas believes that the refusal to disclose the CI's identity denied him due process and the right to access exculpatory evidence. Thomas explains that the informer's privilege is codified at K.S.A. 60-436. He emphasizes that the identity of an informant should be revealed if the disclosure is essential to assure a fair determination of the issues. Thomas asserts that the denial of fundamental fairness and due process is "glaring" because the trial court did not allow him to bring the CI into the courtroom to testify about his conversations with Officer Fettke for the purpose of proving the truth of the matter asserted.

The "mere tipster" is an informant whose information precipitates an investigation. In contrast to the tipster, the informant who actually engages in or observes the criminal activity of the defendant is in a position to provide independent evidence rel-

evant to the defense of the case. *State v. Washington*, 244 Kan. 652, 658, 772 P.2d 768 (1989).

The State contends that the CI was a tipster; consequently, disclosure was not essential to assure a fair trial. According to the State, the CI had no direct knowledge of the events forming the basis of the criminal charges against Thomas.

A CI who is a mere tipster and whose information precipitates an investigation is generally not subject to identity disclosure. *Washington*, 244 Kan. at 657. We must determine "[w]hether the informant could provide information essential to a fair trial by providing information relevant and helpful to the defense." 244 Kan. at 657.

The trial court heard testimony from Officer Fettke and knew exactly what information the CI had provided the police. The informant was not a participant in or an observer of Thomas' criminal activity. The CI had information that two other people had taken a third party to the area where Richmond was murdered on the date of the crime but at some unknown time. The individual allegedly made some threatening type remarks about a drug dealer. The CI was not a party to this occurrence. The whereabouts of the principal players in this scenario, two women and allegedly Roger, were known to Thomas. The two women denied any such occurrence. The State is correct. The CI in the case at bar lacks direct knowledge regarding the events in question and is a mere tipster.

Speculation and suspicion regarding what an informant might possibly testify to is not sufficient to require disclosure. *State v. Pink*, 236 Kan. at 722. Thomas has not met his burden to prove the identity of the CI is relevant and material. The trial court did not abuse its discretion. The facts and circumstances were carefully considered at two pretrial hearings on the motion to reveal the identity of the CI.

Affirmed.